STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Michael L. VEACH, Defendant-Appellant-Cross Petitioner.

Supreme Court

*No. 98–2387–CR. Oral argument January 11, 2002.—Decided July 16, 2002.*

2002 WI 110

(Also reported in 648 N.W.2d 447.)

390

392

394

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant-cross petitioner there were briefs and oral argument by *Suzanne Hagopian,* assistant state public defender.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals that reversed a judgment of the Circuit Court for Waushara County, Lewis R. Murach, Judge. *State v. Veach,* 2001 WI App 143, 246 Wis. 2d 395, 630 N.W.2d 256. The circuit court had entered a judgment of conviction against Michael L. Veach on two counts of first-degree sexual assault of a child. The court of appeals reversed the convictions.

¶ 2. The two counts stemmed from allegations by a ten-year-old girl, Rebecca L. (Becky), that Veach had sexually assaulted her on two separate occasions when she was seven years old. Both incidents allegedly occurred when Becky and her family were camping with Veach and his girlfriend. Becky claimed that Veach had touched her vagina while the two were lying on a hammock, and touched her vagina and buttocks while they were spending the night in Veach's van. Veach pleaded not guilty to each count and asserted that he had not touched Becky "inappropriately".

¶ 3. The State filed a pretrial motion in limine seeking the admission of other acts evidence of Veach's

conviction for the 1983 sexual assault of his then nine-year-old daughter. The circuit court granted the State's motion to admit the other acts evidence, over Veach's objection.

¶ 4. A jury found Veach guilty of both counts. Veach then filed a postconviction motion alleging ineffective assistance of counsel. He claimed that his trial counsel had failed to inform him of the possibility of a *Wallerman*[1] stipulation, in which Veach would stipulate to certain elements of the crime of first-degree sexual assault of a child, thereby preventing the State from introducing other acts evidence against him. The circuit court denied Veach's motion.

¶ 5. Veach appealed, alleging that the other acts evidence was inadmissible, and that his trial counsel was ineffective. *Id.* at ¶ 1. The court of appeals reversed his conviction in a split-decision. *Id.* It determined that the other acts evidence was admissible but also determined that, pursuant to *State v. DeKeyser*, 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998), Veach's trial counsel had provided ineffective assistance by not informing Veach that he could enter into a *Wallerman* stipulation. Veach, 2001 WI App 143, ¶¶ 31, 41–42.

¶ 6. The State filed a petition for review, and Veach filed a cross-petition for review. We granted both petitions.

¶ 7. The issues in this case concern the admission of other acts evidence, Wisconsin's "greater latitude" rule for admission of other acts evidence in cases involving children and sex crimes, stipulations to elements of crimes, and the standards for claims of ineffective assistance of counsel.

---

[1] *State v. Wallerman,* 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996).

¶ 8. More specifically, the issues are: (1) Did the circuit court erroneously exercise its discretion in admitting other acts evidence of Veach's sexual assault of his daughter? (2) May a defendant stipulate to certain elements of a crime or defenses to the crime, and if so, must the State and the circuit court accept the stipulation? (3) Does a defense counsel's failure to offer such a stipulation constitute ineffective assistance of counsel?

¶ 9. We determine that the circuit court did not erroneously exercise its discretion in admitting the other acts evidence in this case. Our determination is based on application of the three-part test for admission of other acts evidence established in *State v. Sullivan,* 216 Wis. 2d 768, 576 N.W.2d 30 (1998), and the greater latitude rule, which was re-affirmed by this court in *State v. Davidson,* 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606, and *State v. Hammer,* 2000 WI 92, 236 Wis. 2d 686, 613 N.W.2d 629. We determine that a defendant may offer to stipulate to elements of or defenses to crimes, but neither the State nor the circuit court is obligated to accept the stipulation offer. Finally, we determine that a defense counsel who fails to offer to stipulate to an element or a defense in a criminal case has not necessarily provided ineffective assistance of counsel. In this case, Veach's trial counsel did not offer a stipulation, but the circuit judge stated at Veach's postconviction hearing that he would not have accepted a stipulation even if it had been offered. We conclude that trial counsel's failure to offer such a stipulation, even if it constituted deficient performance, did not result in prejudice to Veach, and therefore did not render his counsel ineffective.

¶ 10. Accordingly, we reverse the decision of the court of appeals.

398

## I. BACKGROUND

¶ 11. Becky, the victim in this case, told Detective Curtis Olson of the Waushara County Sheriff's Department[2] on January 27, 1997 that a man named "Michael," later identified as Michael Veach,[3] had touched her vagina and buttocks on two occasions a few years earlier.[4] Becky told Olson that Veach had touched her "butt," under her clothes, while they were in his van and had touched her "pee pee," under her clothes, when they were in a hammock.

¶ 12. Detective Olson contacted Veach on February 2, 1997, and told him of the allegations. That same day, Veach went to see Olson and voluntarily gave a statement.[5] The exchange between Olson and Veach went in part, as follows:

> Olson: Okay. What, what's your side? You know, what have you got to tell me about it?
>
> Veach: It didn't happen. I don't know what else to tell you, you know.
>
> Olson: What about the time in the van? She claims that you touched her in the van.

---

[2] Detective Olson interviewed Becky after he was informed of her allegations by the Fond du Lac County Sheriff's Department.

[3] Becky told Detective Olson that she thought the man who touched her was named Michel Holt, but clarified that she was referring to the boyfriend of her Godmother, Jeannie Holt.

[4] When asked when the touching occurred, Becky told Detective Olson: "Um I don't know cause that's so long ago when I was little." She then stated that it occurred "I think when I was seven."

[5] The Waushara County Sheriff's Department recorded the statements made by Veach and by Becky.

Veach: Oh, that was the night she stayed in the van because it was so cold and I told her that, I carried her to the bathroom, brought her back, got her wrapped back up in a sleeping bag, and she still said she was cold and I kinda rubbed her back and her legs and everything else through the sleeping bag trying to warm her up.

Olson: Okay. So there's no, no other contact with her?

Veach: No other contact.

Olson: Okay. You were both clothed at the time?

Veach: Completely.

Olson: There's another time that she is alleging that you, you touched her inappropriately. Um, and that was the time in the hammock. Um, what can you tell me about that?

Veach: I don't know. They, I was swinging in the hammock, she wanted to get in with me. There's other people around. It just didn't happen.

¶ 13. Veach was charged with two counts of sexual assault of a child, contrary to Wis. Stat. § 948.02(1) (1993–94),[6] on May 16, 1997. The probable cause portion of the complaint referred to the statement Becky gave to Olson, as well as reports made by Dr. Marianne Niles of the Fond du Lac County Department of Community Programs. The complaint indicated that Becky had told Dr. Niles about the incidents in the hammock and in the van. Becky stated that "Michael was lying in the hammock and that she had joined him in a reclined position; lying on top of him in a manner whereby they were facing the same direction and her back was

---

[6] All subsequent references to the Wisconsin Statutes are to the 1993–94 version unless otherwise indicated.

400

against [his] stomach. . . . Michael had touched her with his hand, underneath her clothing in the area where she goes to the bathroom and which she refers to as her 'bottom' and in particular the area on her front.'[7] Becky stated that "Michael rubbed this area with his hand, underneath her clothing in a back and forth fashion, but that he did not invade her vagina with his hand or fingers."

¶ 14. Dr. Niles' report further stated that Becky had told of a second incident, occurring when she and Veach were spending the night in Veach's van. Becky said they left the van to go to the bathroom, and when they returned, she laid down on her stomach, and Veach "began rubbing her on her stomach, back, bottom and butt." According to the report, Becky asserted that Veach "rubbed her upon these areas inside of her clothing," but that he did not "invade any part of her body."

¶ 15. The State filed a motion in limine seeking the admission of other acts evidence; it also filed a notice of intent to offer admissions made by Veach. It sought to present evidence relating to Veach's 1988 conviction for first-degree sexual assault, contrary to Wis. Stat. § 940.225(1) (1985–86). The 1988 conviction stemmed from allegations by Veach's daughter that he had sexually assaulted her in 1983, when she was nine years old and Veach was living with her and her mother. Veach's daughter told Detective Christ Tzakais of the Fond du Lac County Sheriff's Department about two incidents in great detail. The first incident involved Veach allegedly removing his clothes and his daughter's

_____
[7] Dr. Niles' report and Becky's testimony at trial made clear that Becky referred to her vaginal area as her "bottom" and her buttocks as her "butt."

401

clothes, licking her breasts, laying on top of her and attempting to insert his penis into her vagina, rubbing her vagina and buttocks, and then ejaculating onto her stomach. The other incident involved Veach's asking his daughter to put his penis into her mouth. The daughter said she refused, but that he "stuck his penis into [her] mouth" and ejaculated. She alleged that Veach had sexual contact with her on six or seven other occasions.

¶ 16. Veach gave a statement to Detective Tzakais in which he admitted virtually all his daughter's allegations regarding the first incident. He did not specifically deny the other incidents but told Tzakais that he only remembered the first incident. He acknowledged, however, that the other incidents could have occurred. Veach then pled guilty to one count of first-degree sexual assault and was sentenced to one year in the county jail, along with a five-year term of probation.

¶ 17. For the present case, the State wanted to present the statement given by Veach's daughter as well as the statement subsequently given by Veach. The circuit court, Judge Lewis B. Murach, held a hearing to decide the State's motions. At the hearing, the State argued that the other acts evidence and Veach's admission to the 1983 sexual assault would be relevant to Veach's intent or motive to touch Becky's vagina and buttocks for the purpose of sexual gratification and to whether Veach's touching of prohibited body parts was intentional or was a mistake.

¶ 18. Veach's trial counsel objected to the admission of the other acts evidence on the grounds that it had no probative value, did not fit within the other acts evidence exceptions, and was unfairly prejudicial.

¶ 19. The court granted the State's motion, finding that the evidence was relevant to show that "this was not an accident, this was not a mistake. That it goes

402

to show that the contact that occurred was intentional contact, not unintentional contact. That it was for a particular motive, i.e. sexual gratification and not for other matters."

¶ 20. The court found that the other acts evidence was "extremely prejudicial to the defendant" but also "considerably probative." It concluded that the evidence "bears upon the matter to be litigated and decided by the jury" and was not unfairly prejudicial. The court decided to allow admission of the evidence.

¶ 21. Immediately before trial, the district attorney informed the court, the defendant, and defense counsel that he intended to offer a certified copy of the judgment of conviction from Fond du Lac County, the testimony of the detective who took the statement from Veach in 1987, and the substance of the statements from Veach. He also stated that Veach's daughter was unable to testify.

¶ 22. Defense counsel objected, arguing that he would not have an opportunity to cross-examine Veach's daughter. The court allowed admission of the other acts evidence, restating its previous ruling that the evidence was admissible "not just for impeachment, but rather to prove motive, plan, intent, and all the various matters that go into the elements of the offense."

¶ 23. At trial, the jury heard testimony from Becky, who testified that when she was seven years old, on a night in July, 1994, Veach had touched her at the campground where her family and Veach and his girl-friend often camped. Becky said that Veach was in the hammock on his back, "just laying there rocking." She testified that Veach asked her to get into the hammock with him. She said she laid down on Veach's stomach (her back on his front), and then he touched her with his right hand. She claimed that he put his hand inside

her shorts and underwear and rubbed her vaginal area "back and forth," for about "a minute." Becky testified that Veach did not threaten or hurt her, and that he did not try to insert his finger into her vagina.

¶ 24. Becky further testified that Veach touched her again in August of the same year. With her mother's permission, she and Veach were sleeping in Veach's van because of cold weather. Veach awoke and asked her if she had to go to the bathroom. She did, so Veach carried her to the bathroom. When they returned to the van, she got into her sleeping bag, zipped it up, and laid down on her stomach.

¶ 25. Becky claimed that Veach "unzipped" her sleeping bag down to her knee, and while lying next to her on the floor on his stomach, began to touch her back underneath her shirt. She said that he then rubbed her "butt" for about a minute on both cheeks, inside her clothes, and then rubbed her stomach, by putting his hand underneath her. Then he began to rub Becky's vaginal area with his fingertips, rubbing back and forth. She again testified that Veach did not threaten or hurt her and did not try to insert his finger into her vagina.

¶ 26. Detective Olson testified about the interview in which Veach told him "he brought [Becky] back to the van from the bathroom and wrapped her up in a sleeping bag and then she was cold and he rubbed her back and legs and everything else through the sleeping bag."

¶ 27. Detective Tzakais testified about the other acts evidence, Veach's 1983 sexual assault of his daughter. He summarized his report of the incident, stating of Veach that:

> about six months prior to him leaving the household, he recalls his first sexual contact with [his daughter]. He was able to describe that for me in great detail. He took

404

her clothes off. He laid on top of her. He ejaculated. He sucked her breasts and he felt bad about the matter. He also indicated—I asked him if he could recall another incident where [his daughter] described him having her give him a blow job and he indicated he did not recall that. However, he indicated that it could have happened. He also was confronted and asked if he recalled the other six incidents that—

¶ 28. At this point, defense counsel objected. He stated "My objection would go to the fact that we are also going to introduce a judgment of conviction which shows one conviction and not a series of events." The court overruled the objection.

¶ 29. The district attorney continued questioning Tzakais, who eventually stated:

I asked him if there were six other incidents and he indicated that he didn't recall them. However, they in fact could have happened and the fact that the incident he described was the first incident and there was six months after that incident before he left the home because he was having sexual contact with [his daughter] was my concern.

¶ 30. At the close of Tsakais' testimony, the State rested. Veach then testified that Detective Tsakais' testimony regarding Veach's admission to the first incident with his daughter was correct. He further said that he had left his wife and family "Because of what I had done to my daughter, I was feeling real guilty about it." Veach said that he admitted what he had done to his daughter and pled guilty. Conversely, he denied Becky's allegations, "Basically because I didn't do it. I just didn't do it."

¶ 31. Defense counsel then specifically asked Veach about the alleged incidents in the hammock and the van. Veach acknowledged that Becky had been in

the hammock with him "quite often," but he denied that he ever used the hammock at night, the time of day when the assault purportedly occurred.

¶ 32. Veach acknowledged that he remembered the time Becky slept in his van, and said:

> I put her in the van and she crawled into her
> sleeping bag and she told me she was cold and wanted
> to know if she could cuddle up next to me. I told her no.
> I did offer to rub her arms and back and tried to warm
> her up that way.

When defense counsel asked if he had rubbed her arms and back through the sleeping bag, Veach responded: "Through the sleeping bag." He again denied touching Becky inappropriately in any fashion.

¶ 33. Veach also acknowledged that he had been convicted of one crime, the sexual assault of his daughter, but he asserted that he had touched a child inappropriately only that one time. When asked directly if he ever touched Becky inappropriately, he repeated: "No, I did not."

¶ 34. On cross-examination, Veach denied that Becky had ever laid on top of him in the hammock, but acknowledged spending the night with her in the van. When the district attorney asked if he was treating Becky in a fatherly way when he rubbed her back in the van, Veach responded: "Yes." The district attorney asked Veach about the rubbing in the van, inquiring about what Veach meant when he said he rubbed Becky's back and legs and "everything else." Veach responded: "Everything else, I meant her arms and her back." When the question was essentially repeated, Veach responded: "Her leg or arm or feet, you know. . . ."

¶ 35. The district attorney then turned the questioning towards Veach's sexual assault of his daughter.

District attorney: Do you recall you told us that you told Detective Tzakais about everything you did with your daughter[].

Veach: Correct.

District attorney: You admitted that about six months before you left the house there was an incident that started everything, is that true?

¶ 36. In response to direct questioning about "the incident that started everything," Veach acknowledged that while in his daughter's bedroom, he took off his clothes, and his daughter's clothes, and then touched his daughter inappropriately. The district attorney asked: "What do you mean by that. Did you rub her back and rub her legs?" Veach replied that he had not, that he touched his daughter "on her bottom." He explained that by bottom, he meant "both sides," her vagina and her buttocks. He acknowledged that he was aroused by touching his daughter, that he got an erection and that he ejaculated on his daughter's naked stomach. He denied, however, that he was thinking about the incident with his daughter when he was in the van with Becky.

¶ 37. The district attorney continued questioning Veach:

District attorney: Now you told us, Mr. Veach, that you think that you admitted all your wrongdoings before?

Veach: I have.

District attorney: Do you recall when Detective Tzakais was interviewing you and you told him you only remembered one incident?

Veach: That's all there was.

District attorney: Do you remember when he asked you about the fact your daughter [] said it happened at least six or seven times?

Veach: Yes.

District attorney: Your response to him was you didn't recall but it could have happened, is that correct?

Veach: It could have been.

District attorney: And also when he asked about an incident where your daughter [] came home when she was nine years old and you took her into the bedroom and had her take her clothes off and had her suck on your penis. You don't recall that but that could have happened?

Veach: No.

District attorney: Do you remember telling Detective Tzakais it could have happened but you don't remember it?

Veach: I could have.

. . . .

District attorney: Mr. Veach, could you tell us what your definition of being in a fatherly way [is], the terminology you used when you talked to Detective Olson?

Veach: Very concerned for the child's well being.

District attorney: Were you acting in a fatherly way when you had your nine year old daughter take her clothes off?

Veach: No.

District attorney: Were you acting in a fatherly way when you rubbed her vagina and butt and when you came on her chest?

408

Veach: No.

District attorney: And you are telling me you were acting in a fatherly way when you were in the van and rubbing Becky's back and legs and everything else, is that what you are telling us?

Veach: Through[] the sleeping bag, yes.

¶ 38. At this point the State finished questioning Veach, and the defense rested.

¶ 39. At the close of trial, the jury found Veach guilty of two counts of first-degree sexual assault of a child. The court later sentenced him to 10 years in prison on the first count, for the touching in the hammock, and 20 years in prison on the second count, for the touching in the van. The 20–year sentence was imposed and stayed, and Veach was placed on probation for 20 years.

¶ 40. Veach filed a postconviction motion pursuant to Wis. Stat. § 809.30(2)(h), alleging that his trial counsel had provided ineffective assistance by not offering a *Wallerman* stipulation. The circuit court held a *Machner*[8] hearing, where Veach and his trial counsel both testified. The circuit court denied Veach's motion orally at the close of the hearing, and issued a written order denying the motion on December 29, 1998.

¶ 41. Veach appealed on the grounds that the circuit court improperly admitted the other acts evidence, and that his defense counsel provided ineffective assistance by not knowing he could exclude the other acts evidence by offering a *Wallerman* stipulation.

¶ 42. The court of appeals reversed Veach's conviction, in a published decision authored by Judge

[8] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Vergeront. *Veach,* 2001 WI App 143. The court agreed with the State that the circuit court properly exercised its discretion in admitting the other acts evidence in this case. However, the court also noted that Veach's trial counsel did not know about *Wallerman* stipulations or propose that Veach enter one. Therefore, pursuant to *DeKeyser,* the court concluded that Veach's trial counsel had provided ineffective assistance.

¶ 43. The State petitioned for review on the stipulation and ineffective assistance issues, and Veach cross-petitioned for review on the issue involving admission of other acts evidence. We granted both petitions.

## II. ANALYSIS

¶ 44. This case comes to the court on a petition for review and a cross-petition for review. The issues raised in each petition are intertwined, so we address them together. This case can be broken down into three issues: (1) Did the circuit court erroneously exercise its discretion in admitting other acts evidence of Veach's sexual assault of his daughter? (2) May a defendant stipulate to certain elements of a crime or defenses to the crime, and if so, must the State and the circuit court accept the stipulation? (3) Does a defense counsel's failure to offer such a stipulation constitute ineffective assistance of counsel?

A. Other Acts Evidence

¶ 45. The first issue is the correctness of the circuit court's decision to admit other acts evidence. We begin with an overview of the well-established standards for a circuit court's discretionary decision whether to admit other acts evidence.

410

¶ 46. The admission of other acts evidence, also known as *Whitty*[9] evidence, is governed by Wis. Stat. §§ (Rule) 904.04(2) and 904.03. Section 904.04(2) provides:

> 904.04 Character evidence not admissible to prove conduct; exceptions; other crimes. . . .
>
> (2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 47. Section 904.03 provides:

> 904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.
>
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

██

¶ 48. "Other acts evidence should be used sparingly and only when reasonably necessary." *See Whitty,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967). It may not be used to demonstrate that the accused has a certain character and acted in conformity with that trait. *Sullivan,* 216 Wis. 2d at 782 (citing 7 Daniel D. Blinka, *Wisconsin Practice: Evidence* § 404.5, at 110).

---

[9] *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967).

¶ 49. In *Whitty,* this court offered four reasons justifying the rule excluding other acts evidence:

> (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes.

*Whitty,* 34 Wis. 2d at 292; *see also Sullivan,* 216 Wis. 2d at 782–83. "[T]he exclusion of other acts evidence is based on the fear that an invitation to focus on an accused's character magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged." *Sullivan,* 216 Wis. 2d at 783.

¶ 50. In *Sullivan,* we set forth a three-part "analytical framework" for the admissibility of other acts evidence:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?

> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or

412

proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* Wis. Stat. § (Rule) 904.03.

*Id.* at 772–73.

■

¶ 51. In addition to the general standards for admission of other acts evidence, we must also consider that this case involves allegations of child sexual assault. In cases involving allegations of sexual assault, particularly child sexual assault, courts are to permit a "greater latitude of proof as to other like occurrences." This "greater latitude" rule was recently explained and reaffirmed in *Davidson* and *Hammer.*

¶ 52. The greater latitude rule has existed in Wisconsin since at least 1893, when it appeared in *Proper v. State,* 85 Wis. 615, 624–25, 55 N.W. 1035 (1893); *see Davidson,* 2000 WI 91, ¶ 37. As we explained in *Davidson,* the greater latitude rule is necessary because of "the difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence in such cases." *Davidson,* 2000 WI 91, ¶ 42 (citing *State v. Friedrich,* 135 Wis. 2d 1, 27–35, 398 N.W.2d 763 (1987)).

■

¶ 53. Application of the greater latitude rule does not displace the *Sullivan* three-part test; courts are to apply the *Sullivan* test, but in doing so, they must permit greater latitude in each step of the test. *Id.* at ¶¶ 46, 51–52.

¶ 54. In this case, the circuit court allowed the admission of other acts evidence of Veach's sexual assault of his daughter. We must evaluate the circuit court's decision in light of the standards set forth above.

¶ 55. We review a circuit court's decision to admit evidence under a discretionary standard. The question on review is not whether this court would have allowed admission of the evidence in question. Instead, if the circuit court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach," we affirm its decision. *Sullivan,* 216 Wis. 2d at 780–81.

¶ 56. We have set forth the other acts evidence introduced at trial and put it in context. We will now review the circuit court's decision to admit that evidence. We begin with the first part of the three-part test set forth in *Sullivan.*

¶ 57. The first question is "Was the other acts evidence offered for an acceptable purpose?" In assessing the purpose for the offering of other acts evidence, we apply the greater latitude rule. *See Davidson,* 2000 WI 91, ¶¶ 46, 51–52.

¶ 58. In this case, there is no dispute that the State offered the other acts evidence for an acceptable purpose. Veach acknowledges that the State offered the evidence to prove intent, motive, and absence of mistake or accident. The transcript of the motion hearing demonstrates that the circuit court clearly understood the purposes for which the State offered the evidence:

> So, the State is proposing to admit this evidence to show that *this was not an accident,* this was *not a*

414

*mistake.* That it goes to show *that the contact that occurred was intentional* contact, not unintentional contact. That it was *for a particular motive, i.e. sexual gratification* and not for other matters. That the circumstances may reflect some of these other things as well. The presence in the van with this young child. *Was this a plan,* was it not, so forth (emphasis added).

¶ 59. The second part of the three-part *Sullivan* test is "Was the evidence relevant under Wis. Stat. § 904.01?" Relevance of other acts evidence has two components: The evidence must relate to a fact or proposition of consequence to the determination of the action; and it must have probative value—a tendency to make a consequential fact more or less probable than it would be without the evidence. *Sullivan,* 216 Wis. 2d at 785–86.

¶ 60. Veach argues that the other acts evidence was impermissibly admitted to prove matters that he did not dispute. He claims that the circuit court erred by admitting the evidence "to prove a proposition—Mr. Veach's mental state when he touched Rebecca's intimate parts—that was not of consequence to the determination because Mr. Veach denied that the touchings occurred." He further claims that the court erred because it "admitted the prior acts because it believed Mr. Veach's defense was that he touched the child but innocently." He contends that he did not claim that he touched the child by accident. Rather, his defense, consistent with what he had told police, was that it "just didn't happen."

¶ 61. Veach takes issue with this court's statement in *Davidson,* 2000 WI 91, ¶ 65, that an element of a crime constitutes a consequential fact that the State

must prove even if the defendant does not dispute the element. Veach claims that only disputed matters constitute facts of consequence which the state must prove. He asserts that in this case, intent to touch is not a fact of consequence. He claims that he disputes only that the touching occurred, but does not dispute that any touching which did occur was intentional.

¶ 62. The State maintains that the circuit court properly exercised its discretion in finding the other acts related to a fact of consequence. It points out that this court recently affirmed that, " 'The state must prove all the elements of a crime beyond a reasonable doubt, even if the defendant does not dispute all of the elements . . . . Evidence relevant to motive is therefore admissible, whether or not defendant disputes motive.' " *Davidson,* 2000 WI 91, ¶ 65 (quoting *State v. Plymesser,* 172 Wis. 2d 583, 594–95, 493 N.W.2d 367 (1992) (citations omitted)). Further, "If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element." *Hammer,* 2000 WI 92, ¶ 25 (citing *Plymesser,* 172 Wis. 2d at 594–95.

¶ 63. The State contends that in this case, the other acts evidence was relevant to prove motive, intent, absence of mistake or accident, and plan or scheme. It asserts that the defense Veach claims to have asserted—that he did not touch Becky—is inconsistent with his story to police and with reality. It points out that Veach acknowledges touching Becky in the van, but claims that he did not touch her intimate parts. It further asserts that Veach acknowledges laying in the hammock with Becky on many occasions, and he does not assert that two people can lay in the hammock without touching. His claim, therefore, is only that he did not touch her private parts.

416

¶ 64. According to the State, regardless of Veach's claim that he did not touch Becky's intimate parts, the State must prove that he touched her, intentionally, for the purpose of sexual gratification or arousal. The State asserts that Veach's acknowledgment of intentionally touching Becky's non-private parts in the van and laying with her in the hammock "brought all these issues into sharp focus."

¶ 65. In determining whether the circuit court properly admitted other acts evidence in this case, we turn to the motion in limine regarding admission of the evidence, and to the hearing on the motion. We then evaluate the circuit court decision in light of the greater latitude rule. *See Davidson,* 2000 WI 91, ¶¶ 46, 51–52.

¶ 66. When the State filed its motion in limine it attached 17 pages of documents, including the statements made by Veach and his daughter to Detective Tsakais in 1987, and the statement Veach gave to Deputy Olson regarding Becky's allegations. It also submitted a brief. Judge Murach stated at the hearing that he had read the brief. There is no reason to think he had not read the other documents submitted by the State. Judge Murach therefore knew what Veach had told Deputy Olson about Becky's allegations. He knew that the statement reflected the following interview:

> Olson: Okay. What, what's your side? You know, what have you got to tell me about it?
>
> Veach: It didn't happen. I don't know what else to tell you, you know.
>
> Olson: What about the time in the van? She claims that you touched her in the van.
>
> Veach: Oh, that was the night she stayed in the van because it was so cold and I told her that, I carried her to the bathroom, brought her back, got her wrapped

back up in a sleeping bag, and she still said she was cold and I kinda rubbed her back and her legs and everything else through the sleeping bag to warm her up.

Olson: Okay. So there's no, no other contact with her?

Veach: No other contact.

Olson: Okay. You were both clothed at the time?

Veach: Completely.

Olson: There's another time that she is alleging that you, you touched her inappropriately. Um, and that was the time in the hammock. Um, what can you tell me about that?

Veach: I don't know. They, I was swinging in the hammock, she wanted to get in with me. There's other people around. It just didn't happen.

¶ 67. In this statement, Veach did say that "It didn't happen. I don't know what else to tell you, you know." He did say about the incident in the hammock, "It just didn't happen."

¶ 68. Veach did not, however, say that he was misidentified. He did not say that he was not in the van with Becky or that he was not in the hammock with Becky. He did not imply that he was uncertain or unaware of the incidents to which Becky was referring. He instead made clear that he knew exactly what the alleged incidents were. He said, "Oh, that was the night . . . I kinda rubbed her back and her legs and everything else through the sleeping bag." He also said, "I was swinging in the hammock, she wanted to get in with me." Before the hearing, this is all the information Judge Murach had.

¶ 69. At the motion hearing, the State argued that it was offering the other acts evidence:

418

specifically to establish that Mr. Veach at the time that he engaged in the conduct alleged was doing so for the purpose of sexually gratifying himself. . . . [T]he State is entitled to offer evidence that this type of behavior was something which Mr. Veach had been prone to do in the past, not to prove he acted in propensity with it, but to establish for the jury that people are sexually aroused by seven or eight or nine year old children. . . . He has denied that any wrongful touching occurred, but it's clear from his statements that he did at leas[t] on one occasion touch the victim on her back in what he described as a fatherly way . . . . [T]he State clearly can introduce other acts evidence, first of all to establish that the contact did occur because it established the plan that Mr. Veach had in having the young child in a position where he could have molested her. . . . Secondly, is the fact that the touching which Mr. Veach has described was for the purpose of sexual gratification. The girl says it was upon her buttocks and upon her vaginal area inside the clothes. Mr. Veach says the touching was only in a fatherly way. It goes to the purpose of the touching and it also goes to the issue of witness credibility.

¶ 70. Veach's counsel argued about the probative value of the other acts evidence, about its remoteness and its lack of similarity with the current allegations. He spoke about the true use of other acts being to show propensity, and then said:

The only purpose of raising that . . . in a case like this where the only two allegations are that this child was touched and I don't know if there was any touching even underneath the clothing, as to get a conviction for that. I'm not going to talk about the credibility much. He has denied this. The child has testified. *I'm not sure if there is not a mistake here in what she thought he was doing and what he was actually doin[g]. I don't know.* It seems to me if he had that kind of tendency for sexual gratification and if he wanted to tie this into the act

419

that he did before, there should have been some further activity that night, but there wasn't (emphasis added).

¶ 71. In rebuttal, the State seized on trial counsel's reference to mistake. The State said, "We are also here to address another issue which [defense counsel] has introduced which is the mistake, that the victim has misinterpreted what was occurring. That, your honor, is one of the very elements of 904.02(2) to which this type of evidence is admissible. The absence of mistake."

¶ 72. Given an opportunity to respond, defense counsel did not attempt to clarify that the defense Veach was asserting would negate all mental elements and preclude the admission of other acts evidence. Nor did he attempt to characterize the facts in some other fashion, to demonstrate that Veach was not at least contemplating a defense that included forcing the State to prove that any touching was not accidental.[10] Instead, defense counsel stated, "I'm not sure I can add anything to what I said before, your honor."

¶ 73. In deciding the motion, Judge Murach demonstrated that he understood and considered the alleged facts of the case, the arguments that the parties had just made, and the law regarding other acts evidence. He stated, in part:

> So the State is proposing to admit this evidence to show that this was not an accident, this was not a mistake. Then it goes to show that the contact that occurred was intentional contact, not unintentional contact. That it was for a particular motive, i.e. sexual gratification and not for other matters. That the circumstances may

---

[10] We in no way imply that defense counsel performed deficiently or provided ineffective assistance in not making this argument.

reflect some of these other things as well. The presence in the van with this young child. Was this a plan, was it not, so forth. . . . I haven't heard the actual evidence. I know what the claims are . . . . *The defendant's position is that this is all a mistake. That any touching that he had with this child in the van that night was accidental as far as any kind of sexual purpose was concerned. That it was not a sexual motive. That this was not for the purpose of gratification. That puts us squarely on the hot seat. That's what the proof of motive would bear upon.* That's what the prior evidence would be used to address. . . . These, from the description that I have heard are the issues to be decided. *Whether the touching was inadvertent, accidental, not for sexual purposes or whether it was planned, whether it was for a sexual motive and whether there was not mistake at all. That's the key issue* (emphasis added).

¶ 74. Veach argues that the evidence at trial indicated that his real defense was that no touching occurred and that he was not disputing mental elements of the crime. For support, he points to comments in the post-conviction motion hearing in which defense counsel said: "Basically, the theory of defense was that it did not occur. In other words, Mr. Veach did not do that." Defense counsel clarified that the defense was that Veach did not touch Becky's buttocks or vagina. When asked if it was "in any way the theory of defense that Mr. Veach touched Becky's vagina or buttocks by mistake," defense counsel said, "I don't believe so. I don't think there was any evidence to that effect."

¶ 75. Veach concludes in his brief that the circuit court "hung on Mr. Veach a defense he never raised and used that imaginary defense as grounds for admitting highly prejudicial other acts evidence."

¶ 76. We disagree with Veach's conclusion. We conclude after inspecting the record that the circuit

421

court listened to and understood the arguments. The circuit court then determined that the evidence was related to many facts of consequence, and many issues in the case. While Veach may not have explicitly argued that his touching of Becky was mistaken or accidental, he did nothing to alert the circuit court that he wished to preclude mistake or accident as a possible defense. He did nothing to alert the circuit court that he wished to prevent the jury from having an opportunity to conclude that even if he *did* touch Becky's vagina or buttocks, he may have done so accidentally or mistakenly, or inadvertently and unknowingly while he "rubbed her back and legs and everything else," through her sleeping bag. When the court made its decision to admit the other acts evidence, it was not and could not have been aware that Veach wished to make such concessions.

¶ 77. Moreover, we made clear in *Davidson* and *Hammer* that the State is required to prove all elements of the crime beyond a reasonable doubt even if an element is not disputed. *Davidson,* 2000 WI 91, ¶ 65; *Hammer,* 2000 WI 92, ¶ 25. Evidence relevant to any element is admissible even if the element is undisputed. *Id.*

¶ 78. We cannot conclude that the circuit court erroneously exercised its discretion in determining that the evidence in question related to a fact or proposition of consequence. The circuit court reasonably determined that mistake or accident was a fact or proposition of consequence based on remarks by defense counsel and on the facts of the case, which indicate that accident or mistake would be a logical defense. The court reasonably determined that intent and motive

422

were facts or propositions of consequence because as elements of the crime, intent and motive are always facts or propositions of consequence. *See Davidson,* 2000 WI 91, ¶ 65; *Hammer,* 2000 WI 92, ¶ 25.

¶ 79. The second part of the relevancy test is whether the other acts evidence has probative value. *Sullivan,* 216 Wis. 2d at 772. The question is whether the evidence tends to make a fact of consequence more or less probable. *Id.* The circuit court concluded that the other acts evidence was "considerably probative." It specifically addressed the issues raised by Veach. The court noted the similarities between Veach's daughter and Becky:

> [T]he similarity of the age in the children in question. The fact that these children had an ongoing contact . . . There would appear to me to be a fair amount of similarity between the kind of contact that is described with regard to the prior incident and the kind of conduct that is described in the complaint, except perhaps for however it ultimately went. That may have more to do with the reaction of the parties and the facts and circumstances being a little bit different.

¶ 80. At the close of the motion hearing the court concluded:

> So, I don't think it is mildly probative. It is going to be considerably probative and the issue is whether it's prejudicial and whether that prejudicial impact is unfair. *Since it bears upon the matter to be litigated and decided by the jury, that is to say whether this was indeed a sexual act or was not. Whether it would be a misunderstood touching, not for sexual purposes or an attempt at sexual gratification, that would appear from the description given to me by both counsel, to be a central issue that this jury will have to decide. So, I'm*

going to admit the evidence bearing surprise in the testimony that would change the picture when we actually are at trial (emphasis added).

¶ 81. We agree with the circuit court's conclusion. The probative value of other acts evidence depends on "the similarity between the charged offense and the other act." *Davidson,* 2000 WI 91, ¶ 67 (quoting *State v. Gray,* 225 Wis. 2d 39, 58, 590 N.W.2d 918 (1999) (citing *Sullivan* 216 Wis. 2d at 786)). In this case, Veach's daughter and Becky were two young girls, one nine years old, the other seven. One was Veach's daughter, the other a long-term family friend whose godmother —"Aunt Jeannie"—was Veach's long-term live-in girl-friend. When asked at trial if Becky trusted him like a father or a close uncle, Veach replied: "She trusted me, yes."

¶ 82. The incident with Veach's daughter occurred in her bedroom, when her mother was not present. The incident with Becky allegedly occurred in the van, where Becky was spending the night, with her parents not present. Veach admitted that he rubbed his daughter's "bottom," meaning her vagina and buttocks. Becky alleged that Veach rubbed her "bottom," meaning her vagina and buttocks. Additionally, as the State points out in its brief, Veach "directly linked" the incidents with his daughter and the alleged incidents with Becky when he told Detective Olson, "he couldn't believe it was happening to him again. That was one of the reasons he moved out of the house and away from his daughter."

¶ 83. We agree with Veach that there are dissimilarities between the incidents. As the court of appeals stated: "The incidents with his daughter were much more intrusive, aggressive, and egregious than the

charged acts." Veach, 2001 WI App 143, ¶ 48. Veach ejaculated during the incident with his daughter; there is no similar evidence he did in the alleged incidents with Becky. We also agree that a long period—11 years—had passed between the 1983 incidents with Veach's daughter and the alleged 1994 incidents with Becky.

¶ 84. We conclude, however, that the evidence obviously had at least some probative value. The other acts evidence was probative of whether any touching occurred. *See State v. Friedrich,* 135 Wis. 2d 1, 23, 398 N.W.2d 763 (1987). It was probative of whether any touching that occurred was accidental or done by mistake. *See Gray,* 225 Wis. 2d at 56 ("Other acts evidence is properly admitted to show absence of mistake if it tends to undermine a defendant's innocent explanation for his or her behavior.") It was probative of the motive for any touching, whether any touching was for the purpose of sexual gratification. *Davidson,* 2000 WI 91, ¶ 65 (quoting *Friedrich,* 135 Wis. 2d at 27–28 ("The average juror could well find it incomprehensible that one who stands before the court on trial could commit such an act.")).

¶ 85. The circuit court did not erroneously exercise its discretion in so finding, particularly in light of the greater latitude rule. *See Davidson,* 2000 WI 91, ¶¶ 46, 51–52.

¶ 86. The final step in the three-part test is whether "the probative value of the other acts evidence is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *See* Wis. Stat. § (Rule) 904.03; *Sullivan,* 216 Wis. 2d at 772–73

(emphasis added). In this case, Veach does not argue that the other acts evidence confused the issues, misled the jury, was a waste of time, or was cumulative. He claims that the danger of prejudice substantially outweighed the probative value of the evidence.

¶ 87. The question under the third part of the test is not whether the other acts evidence is prejudicial, but whether it is unfairly prejudicial. *Gray,* 225 Wis. 2d at 64.

> Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*Davidson,* 2000 WI 91, ¶ 73 (citations omitted).

¶ 88. At the hearing on the State's motion in limine, Veach's defense counsel objected to the admission of the other acts evidence on the grounds that it was unfairly prejudicial. The court disagreed. It stated:

> Sec[tion] 904.03 says that admissible evidence may be kept out even though it is relevant . . . if to introduce it would be unfairly prejudicial. That the evidence would be so overwhelming that it would be unfair to introduce it . . . Usually this would happen in a situation where the evidence is such as to put the defendant in very bad standing with the jury and that doesn't bear very directly upon the issues to be decided. The problem with this particular situation is that these issues are not just supportive. These, from the description I have heard are the issues to be decided. Whether the touching was inadvertent, accidental, not for sexual purposes or whether it was planned, whether it was for a sexual

motive and whether there was not mistake at all. That's the key issue. So, this evidence is extremely prejudicial to the defendant but since it is a central part of the element of the offense, it is not unfairly prejudicial.

¶ 89. The court concluded by saying of the other acts evidence:

So, I don't think it is mildly probative. It is going to be considerably probative and the issue is whether it's prejudicial and whether that prejudicial impact is unfair. Since it bears upon the matter to be litigated and decided by the jury, that is to say whether this was indeed a sexual act or was not. Whether it would be a misunderstood touching, not for sexual purposes or an attempt at sexual gratification, that would appear from the description given to me by both counsel, to be a central issue that this jury will have to decide. So, I'm going to admit the evidence bearing surprise in the testimony that would change the picture when we actually are at trial.

¶ 90. Veach argues that the other acts evidence was unfairly prejudicial because the other acts were so egregious and were described so graphically. He bases part of his argument on his assertion that the other acts evidence related solely to mistake and accident and that his defense was not mistake or accident. Therefore, according to Veach, the danger of unfair prejudice from this "extremely prejudicial" evidence obviously substantially outweighed the non-existent probative value.

¶ 91. We agree that the other acts evidence in this case was graphic, disturbing, and extremely prejudicial. However, as we have determined, the evidence also had tremendous probative value. The record in this case conclusively demonstrates that the circuit court examined Becky's allegations and the statements regarding the other acts, understood and weighed the probative

value of the evidence versus the potential for unfair prejudice, and made a reasonable decision. We cannot determine that the danger of unfair prejudice substantially outweighed the probative value, particularly in light of the greater latitude rule. We therefore conclude that the circuit court properly exercised its discretion in admitting the other acts evidence in this case.

¶ 92. Veach also asserts that some of the other acts evidence admitted at trial was inadmissible hearsay because it was based on statements made by Veach's daughter, who did not testify. He points to mention of the incident involving Veach and his daughter and oral sex, and to mention of other incidents alleged by Veach's daughter. He claims that his trial counsel made a proper objection at trial and that the circuit court improperly denied the objection. He further asserts that the evidence to which he refers was unproven and therefore inadmissible. Veach raised the same issue to the court of appeals, which denied his motion on the grounds that Veach failed to properly raise his objections at trial. *Veach,* 2000 WI App 143, ¶¶ 35–38.

¶ 93. The evidence in question was subject to the State's motion in limine. The State sought admission of other acts evidence and of Veach's admissions. The State sought admission of "certain acts of prior sexual misconduct with [Veach's] daughter." The State also sought to introduce "evidence of [Veach's admissions to . . . Detective Christ Tzakais of the Fond du Lac County Sheriff's Department during . . . the referenced matter."

¶ 94. At the motion hearing, the State asked the court to "declare the admissibility of evidence concerning Mr. Veach's contact with his daughter at the time she was nine years of age." The court granted the

motion. Immediately prior to trial, the State clarified that Veach's daughter would not testify, but that it planned to offer testimony from the detective to whom Veach gave a statement regarding his daughter's allegations. Veach's counsel objected on hearsay grounds to the admission of the judgment of conviction and to the admissions by Veach, as found in his statement to Detective Tzakais. The court made clear that it would allow Detective Tzakais to testify as to Veach's statement, but not as to Veach's daughter's statement.

¶ 95. At trial, Veach's counsel raised two objections relevant to Veach's current claim. The exchanges were as follows:

Detective Tzakais: On September 16th or 17th [Veach's daughter] and her mother came into the sheriff's department quite distraught about something that was going on—

Defense counsel: Objection on hearsay grounds as to what other folks have told Detective Tzakais.

The court: I'll permit some latitude by way of preliminary questions. As we get into it, we need to be attentive to the hearsay problem.

¶ 96. Then a short time later, Detective Tzakais said, about his interview with Veach and Veach's statement to him:

Detective Tzakais: . . . He also indicated—I asked him if he could recall another incident where [his daughter] described him having her give him a blow job and he indicated that it could have happened. He was also confronted and asked if he recalled the other six incidents that—

Defense counsel: Objection. Maybe we should hear this outside the presence of the jury.

The court: For the present time I would ask the officer to respond to questions from the District Attorney.

Defense counsel: My objection would go to the fact that we are also going to introduce a judgment of conviction which shows one conviction and not a series of events.

The court: I would overrule that objection.

¶ 97. We agree with the court of appeals that Veach did not sufficiently raise an objection to this testimony at trial. He did properly object to the statement of Detective Tzakais regarding his daughter's statements. The court denied the objection, but only because the testimony was "preliminary" and it did not refer to any past act. The second piece of challenged testimony did involve past acts, but it entailed Detective Tzakais testifying as to what he asked and what Veach answered. This evidence was subject to the State's motion in limine, and was specifically deemed admissible. Moreover, the court ruled immediately before trial that Detective Tzakais could testify as to Veach's statement to him. As the State now points out, Veach certainly knew what was in his statement to Detective Tzakais, and he failed to object to the admission of testimony regarding his own statement.

¶ 98. When defense counsel did object, he did not make sufficiently clear upon what grounds the objection was based. *See* Wis. Stat. § 901.03(1)(a); *State v. Agnello,* 226 Wis. 2d 164, 174, 593 N.W.2d 427 (1999). Veach contends the objection was to hearsay. If so, we conclude that the circuit court properly overruled the objection, as the testimony was in regards to Veach's statement, not his daughter's.

¶ 99. Veach asserts that other inadmissible evidence may have been admitted on cross-examination of

430

Veach. We need not address the issue, because Veach's counsel made no objection at trial, and the issue is therefore waived. *See Agnello,* 226 Wis. 2d at 172–73.

B. *Wallerman* Stipulations

¶ 100. The second issue for our review concerns Veach's assertion that his counsel should have stipulated to certain elements of the charges against him in order to preclude the State from introducing other acts evidence. In the stipulation, Veach would have conceded that: (1) Becky had not reached the age of 13; and (2) "The touching of Becky's intimate parts, if it occurred, was intentional and for the purpose of sexual gratification."

¶ 101. This type of stipulation—a *Wallerman* stipulation—stems from *State v. Wallerman,* 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996). In *Wallerman,* a defendant charged with attempted homicide, attempted sexual assault, and armed burglary, for allegedly attacking a woman, raised as a defense that he was misidentified—that he was not the perpetrator. *Id.* at 160.

¶ 102. At trial, the state introduced other acts evidence of an uncharged incident four years earlier in the form of testimony from a woman who testified that Wallerman attacked her in much the same way. The court admitted the evidence on the issues of motive and intent. *Id.* at 162.

¶ 103. On appeal, Wallerman claimed that the court erred in admitting the evidence on issues—motive and intent—that he did not dispute. *Id.* The state asserted that Wallerman had not offered a concession to motive or intent, so the state was required to prove both elements beyond a reasonable doubt. *Id.* at 162–63.

431

¶ 104. The court of appeals concluded that to concede an element a defendant had to express a clear and unequivocal intention to stipulate and the stipulation had to completely remove the issues from the case. *Id.* at 167. It determined that Wallerman had not done so, and affirmed his conviction. The court also stated:

> When the defendant is faced with "other acts" evidence but wishes to concede an element of the crime for which the evidence is being offered, the court needs to ensure that the record contains conclusive evidence which the jury may rely on to find guilt before it relieves the State of the duty to prove that element.

*Id.* at 167.

¶ 105. The court set forth guidelines for such a stipulation:

> First, the trial court should carefully explore the breadth of the defendant's offer. The court needs to determine exactly what the defendant is conceding to.
>
> Next, the trial court needs to assess the State's evidence and determine whether the "other acts" evidence would still be necessary even with the defendant's concession. For example, the State's evidence may no longer be needed to prove those elements which the defendant is willing to concede, but it may nevertheless be relevant to the other elements of the crime that the defendant still contests.
>
> Third, the trial court should personally voir dire the lawyers and the defendant to ensure that they each understand the effects of the concession. The trial court needs to ensure that the defendant understands that the State will rely upon the concession to prove its case and will use it when arguing to the jury, and similarly, that the court will instruct the jury about the conces-

432

sion. As important, the defendant must know that he or she has waived the right to produce evidence and make arguments on the element.

Fourth and finally, just like questions involving the admissibility of "other acts" evidence, these concessions or stipulations should be addressed pretrial if possible. Such practice will save resources for the State, which otherwise would have to seek out the factual details of the "other acts" evidence; for the defendant, who would have to prepare rebuttal; and for the trial court, which would have to gauge whether the evidence is admissible.

*Id.* at 167–68 (citations and footnote omitted).

¶ 106. Two years later, the court of appeals decided *State v. DeKeyser,* 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998),[11] a case in which a man allegedly sexually assaulted his granddaughter. The state introduced other acts evidence in the form of testimony from the man's other granddaughter that he had sexually assaulted her in a similar fashion. *Id.* at 441. Defense counsel did not offer a *Wallerman* stipulation, and the court admitted the evidence on the issues of intent, preparation or plan, and absence of mistake or accident. *Id.*

¶ 107. The defendant appealed, asserting that his defense was that the sexual assault never occurred, and that his defense counsel should have stipulated "that the purpose of the alleged contact would have been sexual gratification and that the age of the victim was under sixteen." *Id.* at 441. The circuit court denied DeKeyser's postconviction motion, determining that: (1) DeKeyser would likely not have made a concession

---

[11] This court denied review in both *Wallerman* and *DeKeyser.*

433

due to his adamant denial of the charges; (2) the court would not have accepted DeKeyser's proposed stipulation because the other acts evidence was necessary to prove the touching occurred; and (3) there was no reasonable probability of a different outcome. *Id.* at 441–42.

¶ 108. The court of appeals reversed DeKeyser's conviction. *Id.* at 439. It determined that trial counsel was ineffective in not offering a *Wallerman* stipulation, to "concede elements of a crime in order to avoid the introduction of other acts evidence." *Id.* at 443. The court stated explicitly that, "While we do not hold that a trial court is without discretion to accept a *Wallerman* stipulation because that issue is not before us, a trial court erroneously exercises its discretion if it rejects such a stipulation based on an erroneous view of the law."[12] *Id.* at 443–44. The court disagreed with all the circuit court's reasons for rejecting a *Wallerman* stipulation, and concluded that trial counsel was deficient in not offering such a stipulation. *Id.* at 451. It then concluded that the deficient performance resulted in prejudice to the defendant, and so constituted ineffective assistance. *Id.* at 452. The court cautioned that it did not hold that failure to offer a *Wallerman* stipulation would necessarily mean ineffective assistance:

> Counsel may decline to utilize such a stipulation for a variety of strategic reasons. Such a decision is not deficient performance. Further, the receipt of other acts evidence will not always be prejudicial to the defendant.

[12] *DeKeyser* stated that it did not hold that "a trial court is without discretion to *accept* a *Wallerman* stipulation." We assume that it meant to say that it was not holding that a circuit court is without discretion to *deny* a *Wallerman* stipulation. *State v. DeKeyser,* 221 Wis. 2d 435, 443, 585 N.W.2d 668 (Ct. App. 1998).

> The evidence of guilt may be adequate even without the other acts evidence or the other acts evidence may be of such a nature that it has little impact on the jury. In such cases the receipt of the other acts evidence, even if it could have been excluded by a stipulation, would not undermine our confidence in the verdict.

*Id.* at 453–54.

¶ 109. · In the present case, Veach brought a post-conviction motion under Wis. Stat. § 809.30(2)(h), basing his ineffective assistance of counsel claim on *DeKeyser,* which was decided shortly after Veach's trial but before his postconviction motion hearing. At the post-conviction motion hearing, Veach's trial counsel testified that he did not know about *Wallerman* stipulations at the time of trial, and asserted that if he had known about them, he would have raised the issue with Veach. Trial counsel was uncertain whether he would have recommended that Veach enter into a stipulation, because of the conceptual problem of arguing both that he did not touch Becky, and that if he did touch her, it was for the purpose of sexual gratification.

¶ 110. Veach testified at the hearing that he did not know what a *Wallerman* stipulation was at the time of trial, but if he had known he would have stipulated that Becky was under age 13. He said he would not have been willing to stipulate that he touched Becky's vagina or buttocks, but would have stipulated that if he had touched them it would have been for the purpose of sexual gratification.

¶ 111. Judge Murach denied Veach's postconviction motion. He termed a *Wallerman* stipulation a "hypothetical defense where a defendant makes both the affirmation and the negation of the same facts simultaneously," and deemed it "extraordinarily cynical." The court distinguished this case from a situation

435

where identity was not an issue, and determined that this was not a case where a stipulation would have been a proper resolution of the facts presented. The court concluded that it would not have accepted a *Wallerman* stipulation and that any error by trial counsel in not offering a stipulation was harmless.

¶ 112. Veach appealed, and the court of appeals reversed his conviction. *Veach,* 2001 WI App 143. The court determined that *Wallerman* stipulations are contrary to this court's decision in *Davidson* and *Hammer,* because those cases state that all elements of a crime are of consequence, regardless of whether those elements are disputed. *Veach,* 2001 WI App 143, ¶ 27.

¶ 113. Accordingly, the court of appeals concluded that pursuant to *Davidson,* a *Wallerman* stipulation to an element of the crime charged would not make inadmissible evidence that related to the stipulated element:

> [F]or purposes of the second step of the *Sullivan* analysis, consequential facts are determined with reference to the elements of the crime the State must prove and are not limited to the elements the defendant is challenging in his or her defense. We conclude this holding conflicts with our reasoning in *DeKeyser* that a defense based on a denial that the defendant was present limits the consequential facts for purposes of the second step of the *Sullivan* analysis. We must therefore follow *Davidson,* not *DeKeyser,* on this point.

*Id.*

¶ 114. The court of appeals suggested that in this case trial counsel could not have precluded the admission of other acts evidence by offering a *Wallerman* stipulation. It nonetheless concluded that it was bound under *DeKeyser* to find that trial counsel's failure to offer a *Wallerman* stipulation constituted deficient per-

436

formance. *Id.* at ¶ 42. It then found that Veach suffered prejudice as a result of the deficient performance, and reversed his conviction on the grounds of ineffective assistance of trial counsel. *Id.* at ¶¶ 48–49.

¶ 115. Judge Lundsten dissented, agreeing that *DeKeyser* was contrary to *Davidson,* but asserting that *DeKeyser* did not compel a finding of prejudice to Veach. *Id.* at ¶ 57.

¶ 116. Now, on appeal, the State urges this court to overrule *Wallerman* and *DeKeyser,* and to reject the idea that *Wallerman* stipulations operate to bar the admission of otherwise admissible other acts evidence. It argues that *Wallerman* stipulations are contrary to this court's decisions in *Davidson,* and *Hammer,* contrary to the greater latitude rule, contrary to the rule that other acts evidence is admissible to bolster the credibility of child sexual assault victims, and contrary to the rule that the state can prove its case as it sees fit. The State also asserts that conditional *Wallerman* stipulations, such as the one proposed in this case, are illogical because they result in a person claiming both to have done an act and not to have done the act.

¶ 117. By contrast, Veach contends that *Wallerman* stipulations are compatible with *Davidson* and *Hammer.* He asserts that they serve the purpose of keeping out propensity evidence. He argues that *Wallerman* stipulations are not illogical, that they tend to focus the evidence at trial onto the issues truly in question.

¶ 118. We determine that to the extent *Wallerman* and *DeKeyser* imply that the state and the circuit court are obligated to accept *Wallerman* stipulations, those cases are incorrect and must be overruled. We

437

conclude that requiring the state or the circuit court to accept a *Wallerman* stipulation is directly contrary to Wisconsin law as stated in *Davidson* and *Hammer,* and in the case of child sexual assaults, is also contrary to the greater latitude rule. While we do not hold that *Wallerman* stipulations are invalid per se, we do hold that, with the exception of stipulations to a defendant's status, the state and the court are not obligated to accept stipulations to elements of a crime even if the stipulations are offered in compliance with the four-part test set forth in *Wallerman.*

¶ 119. The first and most important reason for our rejection of *Wallerman* stipulations in cases such as this one is that a stipulation like the one offered by Veach supposes that a defendant can, by use of a *Wallerman* stipulation, concede to an element and make evidence relevant to that element inadmissible. Veach assumes in his argument is that both the state and the court must accept a *Wallerman* stipulation. The *DeKeyser* court declined to decide whether a court has discretion to refuse a *Wallerman* stipulation. *DeKeyser,* 221 Wis. 2d at 443–44. We address the issue here, and decide that a court may refuse such a stipulation.

¶ 120. The court of appeals in this case, both the majority and the dissent, determined that Veach's proposed stipulation to elements of the charge against him brings his proposed *Wallerman* stipulation into direct conflict with *Davidson* and *Hammer.* We agree.

¶ 121. In *Davidson* and *Hammer,* we made clear that the state must prove all elements of a crime, even elements the defendant does not dispute. Accordingly, evidence relevant to undisputed elements is admissible. *Davidson,* 2000 WI 91, ¶ 65; *Hammer,* 2000 WI 92, ¶ 25. We stated in *Davidson:*

As already discussed, the defendant's motive for touching [the victim] was an element of the charged crime, and the [previous] assault related to that consequential fact. Under our prior cases, the fact that the defendant denied sexually assaulting [the victim] does not change this conclusion. "The state must prove all the elements of a crime beyond a reasonable doubt, even if the defendant does not dispute all of the elements. Evidence relevant to motive is therefore admissible, whether or not defendant disputes motive." . . . [*See*] *State v. Hammer,* 2000 WI 92, ¶ 25, 236 Wis. 2d 686, 613 N.W.2d 629 ("If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element.")

*Davidson,* 2000 WI 91, ¶ 65 (citations omitted). We cannot reconcile a *Wallerman* stipulation with the language in *Davidson* and *Hammer,* if the state and the court are obligated to accept the stipulation.

¶ 122. We also conclude that a *Wallerman* stipulation in a child sexual assault case is directly contrary to the greater latitude rule for the admission of other acts evidence in child sexual assault cases. The purpose of a *Wallerman* stipulation in this case—involving an allegation of child sexual assault—is to *preclude* the admission of other acts evidence. The purpose of the greater latitude rule in cases involving allegations of child sexual assault is to "*permit 'a more liberal admission* of other crimes evidence.' " *Davidson,* 2000 WI 91, ¶ 44 (quoting *Friedrich,* 135 Wis. 2d at 31) (emphasis added); *Hammer,* 2000 WI 92, ¶ 23.

¶ 123. We do not mean to imply that *Wallerman* stipulations are per se invalid, even in child sexual

439

assault cases. We simply conclude that the state and the court do not have to agree to *Wallerman* stipulations.

¶ 124. We note that under certain specific circumstances, stipulations to elements of crimes are valid, and acceptance of a properly offered stipulation is required. In *Old Chief v. United States,* 519 U.S. 172 (1997), the Supreme Court held that when evidence of a prior conviction is necessary *solely* to prove the element of prior conviction—a defendant's status—it is an abuse of discretion under Rule 403 of the Federal Rules of Evidence to refuse to grant a defendant's offer to concede the prior conviction. *Id.* The Court made extremely clear, however, that its holding applied only to a defendant's status, not to any element of the criminal act forming the basis for the current charge. *Id.* at 173.

¶ 125. The Court restated "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186–87. The Court concluded that, "This is unquestionably true as a general matter." *Id.* at 187. The Court made extremely clear that acceptance of the stipulation of a criminal record is required only when "the record of conviction would not be admissible for any purpose beyond proving status." *Id.* at 190. It specifically noted that the government is guaranteed the opportunity to seek admission of evidence if there is a "justification for receiving evidence of the nature of prior acts on some issue other than status (i.e., to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .')" *Id.*

¶ 126. In *State v. Alexander*, 214 Wis. 2d 628, 571 N.W.2d 662 (1997), this court similarly found that a circuit court was required to accept a stipulation to a status element. In *Alexander*, a defendant attempted to stipulate that he had a certain number of prior convictions, suspensions or revocations for the purpose of counting prior offenses under Wis. Stat. § 343.307(1). *Id.* at 633–34, 639–40. This court concluded that the circuit court erroneously exercised its discretion by instead admitting evidence on the element of prior offenses. *Id.* at 634. Citing *Old Chief*, we noted that the element of "two or more prior convictions" is a status element of the offense, which is "completely 'dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against [the defendant].' " *Id.* at 644–45 (quoting *Old Chief*, 519 U.S. at 190). We further said, "If evidence is admissible for some other reason, such as proving motive or intent, Wis. Stat. § 904.04(2) regarding other crimes evidence guarantees the State the opportunity to seek its admission. *Id.* at 645 (citing *Old Chief*, 519 U.S. at 190).

¶ 127. Fundamental differences exist between the stipulations offered in *Old Chief* and *Alexander* and the stipulation Veach asserts he would have offered. The stipulations in *Old Chief* and *Alexander* related solely to the defendant's status, were unconditional, and were absolutely dispositive of the stipulated element. The stipulation offered by Veach was to an element of the criminal act he allegedly committed, was conditional, and was not sufficiently broad and clear to remove the issue from the case.

441

¶ 128. In *Old Chief* and *Alexander,* the defendants' stipulations were essentially "I agree that I have one prior felony conviction," and "I agree that I have two prior convictions." In other words, the defendants agreed to admit to a status element of the crimes.

¶ 129. By contrast, the stipulation that Veach in retrospect would have offered was conditional. Veach did not offer to stipulate that "the touching of Becky's vagina and buttocks was intentional and for the purpose of sexual gratification." He offered only to stipulate that "The touching of Becky's intimate parts, *if it occurred,* was intentional and for the purpose of sexual gratification."

¶ 130. The stipulation proposed by Veach was also to elements of the offense that were directly in issue. He wished to stipulate away evidence relating to whether he committed the prohibited acts that made up the crime with which he was charged. This is precisely what *Old Chief* and *Alexander* prohibit. Pursuant to *Davidson* and *Hammer,* it makes no difference that the evidence in question is other acts evidence.

¶ 131. Additionally, we think the stipulation proposed by the defendant is simply inadequate to inform the jury of what is agreed to and what is in dispute, and to remove the issues from the case.

¶ 132. The stipulation that Veach says he would have offered would reference Wis JI—Criminal 162 (1996). It would have said:

> The district attorney and the attorney for the defendant have stipulated or agreed to the existence of certain facts, and you must accept these facts as conclusively proved.

¶ 133. Veach asserts that the agreed facts would have been that, "the touching of [Becky's] intimate part,

442

if it occurred, was intentional and for the purpose of sexual gratification." The stipulation proposed by Veach would not properly inform the jury that accident or mistake, two issues which the facts of this case obviously touched upon, were subject to the stipulation.

C. Ineffective Assistance of Counsel

¶ 134. The court of appeals in this case determined that trial counsel was deficient in not offering a *Wallerman* stipulation, and that this deficiency was prejudicial. The court therefore reversed Veach's conviction on the grounds of ineffective assistance of counsel. For the reasons we have set forth, we reverse the court of appeals decision.

¶ 135. When reviewing a claim of ineffective assistance of counsel, a court may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice. *State v. Johnson,* 133 Wis. 2d 207, 222, 395 N.W.2d 176 (1986) (citing *Strickland v. Washington,* 466 U.S. 668, 697 (1984)). The circuit court made abundantly clear in the postconviction hearing that it would not have accepted a stipulation had one been offered. As we have explained, a circuit court need not accept a stipulation even if one is offered. Therefore, we need not grade the performance of Veach's trial counsel and determine whether not offering a stipulation was deficient performance. We decide only that Veach suffered no prejudice because the court would not have accepted the stipulation. For this reason, we reverse the court of appeals decision and reinstate Veach's conviction.

443

## III. CONCLUSION

¶ 136. In summary, we conclude that the circuit court did not erroneously exercise its discretion in admitting other acts evidence in this case. Although *Wallerman* stipulations are not invalid per se, we hold that the state and the circuit court need not accept them. We conclude that in this case, defense counsel's failure to stipulate to the mental elements of the charges against Veach did not constitute ineffective assistance of counsel because the court would not have accepted the stipulation. We also overrule *Wallerman* and *DeKeyser* to the extent that those cases state or imply that the state or the court must accept a *Wallerman* stipulation, or that failure of trial counsel to offer a stipulation is deficient performance regardless whether the state or the court would have accepted the stipulation. Accordingly, we reverse the decision of the court of appeals and reinstate Veach's conviction.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 137. N. PATRICK CROOKS, J. *(concurring).* I agree with the majority's decision. I write separately, however, because I would explicitly overrule *State v. Wallerman,* 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996), and *State v. DeKeyser,* 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998), and rely on *Old Chief v. United States,* 519 U.S. 172 (1997), and *State v. Alexander,* 214 Wis. 2d 628, 571 N.W.2d 662 (1997). The majority implies that it is overruling *Wallerman* and *DeKeyser* at paragraph 118, but it does not do so explicitly. In fact, at paragraph 123, the majority suggests that it is only modifying those cases by stating, "We do not mean to imply that *Wallerman* stipulations

444

are per se invalid, even in child sexual assault cases." I would overrule *Wallerman* and *DeKeyser;* thus, I respectfully concur. ˘

¶ 138. I am authorized to state that Justices JON P. WILCOX and DIANE S. SYKES join this concurrence.

¶ 139. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* Section 904.04(2) of the rules of evidence clearly and explicitly states that, with some limited exceptions, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that [the person] acted in conformity therewith."

¶ 140. The exclusion of other acts evidence is based on the fear that, if allowed to focus on an accused's character, the trier of fact might punish the accused for being a bad person regardless of his or her guilt of the crime charged or might infer that the accused has a propensity to commit certain acts and acted according to his character in committing the act charged.[1]

¶ 141. As Justice Bradley has written, Wisconsin's other acts jurisprudence "consistently reveals that courts may freely permit prior acts evidence in child sexual assault cases to show the defendant's propensity to abuse children."[2] This case is part of that jurisprudence eroding the evidentiary rule. I disagree with this erosion, and Justice Bradley, Justice Bablitch, and I

---

[1] *State v. Sullivan,* 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998); *State v. Fishnick,* 127 Wis. 2d 247, 253, 378 N.W.2d 272 (1985). *See also Whitty v. State,* 34 Wis. 2d 278, 291, 149 N.W.2d 557 (1967).

[2] *State v. Davidson,* 2000 WI 91, ¶ 108, 236 Wis. 2d 537, 613 N.W.2d 606 (Bradley, J., dissenting).

have called for the court to stop pretending to adhere to Rule 904.04(2) and to acknowledge forthrightly that it sanctions the use of propensity evidence in child sexual assault cases.

¶ 142. I urge the court to adhere to Justice Bradley's sound counsel:

> Rather than endeavoring to stretch beyond repair the definitions of the acceptable purposes under Wis. Stat. § (Rule) 904.04(2), the majority should simply lay all its cards on the table and acknowledge that it is sanctioning the blanket use of propensity evidence in child sexual assault cases. However, the majority maintains its refuge under the cloak of the very statute it simultaneously erodes.
>
> . . . .
>
> An honest and forthright approach by the majority would serve us all better than perpetrating the artifice of adherence to Wis. Stat. § (Rule) 904.04(2). Because the majority engages in legal gymnastics to justify the admission of propensity evidence in contravention of the statute, I dissent.[3]

¶ 143. I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this dissent.

---

[3] *Id.*, ¶¶ 109–110.