In re the Commitment of Gregory J. Franklin:

State of Wisconsin, Petitioner-Respondent,

v.

Gregory J. Franklin, Respondent-Appellant-Petitioner.

Supreme Court

*No. 00–2426. Oral argument December 3, 2003.—
Decided April 1, 2004.*

2004 WI 38

(Also reported in 677 N.W.2d 276.)

For the respondent-appellant-petitioner there were briefs and oral argument by *Patrick M. Donnelly,* assistant state public defender.

For the petitioner-respondent the cause was argued by *Eileen W. Pray* and *Sally L. Wellman,* assistant attorneys general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE D. ROGGENSACK, J.  Gregory J. Franklin was committed by Milwaukee County Circuit Court according to the provisions of Wis. Stat. ch. 980, after a jury found him to be a sexually violent person pursuant to Wis. Stat. § 980.01(7) (1997–98).[1] Franklin claims the circuit court committed reversible error when it admitted "other acts" evidence, contrary to the provisions of Wis. Stat. § 904.04(2). The court of appeals affirmed. We accepted review to clarify whether § 904.04(2) applies to evidence offered in ch. 980 commitment proceedings to prove that it is substantially probable that the respondent will commit acts of sexual violence in the future.[2] We conclude that during a commitment proceeding under ch. 980, § 904.04(2) does not apply to evidence offered to prove that the respondent has a mental disorder that makes it substantially probable that the respondent will commit acts of sexual violence in the future. Because we also conclude that evidence of prior conduct was properly admitted here, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 2.  In March 1998, the State filed a petition pursuant to Wis. Stat. ch. 980, alleging that Franklin was a sexually violent person and that he was within 90 days of release from his sentences for sexual assault.[3]

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] The concurrence asserts that "Wisconsin Stat. § 904.04(2) is not the focus of this case." Concurrence, ¶ 26. However, both the State and Franklin requested that we decide whether § 904.04(2) applied in the context of a ch. 980 proceeding.

[3] Franklin was serving sentences for second-degree sexual assault and attempted second-degree sexual assault, contrary to

The State's petition also alleged that Franklin had a mental disorder that predisposed him to engage in acts of sexual violence.

¶ 3. Prior to trial, Franklin moved to exclude the prior acts evidence, pursuant to Wis. Stat. § 904.04(2). The evidence included Franklin's adult criminal record containing crimes that he asserts are unrelated to sexual activity, pre-sentence investigation reports, department of corrections conduct reports from his periods of incarceration, evidence of his parole violations and references to his juvenile record. The circuit court analyzed the evidence pursuant to Wis. Stat. § 904.01 for relevancy; concluded that it was relevant; determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, pursuant to Wis. Stat. § 904.03; and admitted it. The jury found Franklin a sexually violent person, and the circuit court committed him to a secure facility.

¶ 4. Franklin appealed the commitment order on a number of grounds.[4] The court of appeals affirmed. On the issue of the admission of what he characterized

---

Wis. Stat. §§ 940.225(2)(a) and 939.32 (1985–86), consecutive to an earlier conviction for first-degree sexual assault, contrary to Wis. Stat. § 940.225(1)(b) (1979–80).

[4] Franklin argued on appeal that the State failed to prove he lacked the volitional ability to control his dangerous and sexually violent behavior; that the circuit court erred in admitting the other acts evidence; that the circuit court erroneously exercised its discretion in refusing to give a special jury instruction he requested; that the legislative changes made to ch.980 violated his due process and equal protection rights; and, lastly, that his commitment should be reversed in the interest of justice. *State v. Franklin,* No. 00–2426, unpublished slip op. at ¶ 1 (Wis. Ct. App. March 11, 2003). Before us Franklin argues only that Wis. Stat. §§ 904.01, 904.03 and 904.04 were misapplied.

as other acts evidence, all members of the court of appeals panel agreed that the evidence was properly admitted, but each member had a different rationale for that conclusion. The application of Wis. Stat. § 904.04(2) in this ch. 980 commitment proceeding and the Wis. Stat. § 904.01 and Wis. Stat. § 904.03 questions are the issues before us.

## II. DISCUSSION

A. Standard of Review

¶ 5. This case requires us to construe and apply Wis. Stat. § 904.04(2) in the context of a ch. 980 proceeding. Statutory interpretation and the application of a statute to established facts are questions of law that we review de novo. *State ex. rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 121, 561 N.W.2d 729, 733 (1997); *Stockbridge School Dist. v. DPI,* 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996); *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

¶ 6. However, whether evidence is admissible is a discretionary decision of the circuit court. *National Auto Truckstops, Inc. v. DOT,* 2003 WI 95, ¶ 12, 263 Wis. 2d 649, 665 N.W.2d 198; *Grube v. Daun,* 213 Wis. 2d 533, 541–42, 570 N.W.2d 851 (1997); *State v. Oberlander,* 149 Wis. 2d 132, 140, 438 N.W.2d 580 (1989). We review discretionary decisions under the erroneous exercise of discretion standard. *National Auto Truckstops,* 263 Wis. 2d 649, ¶ 12.

## B. Wisconsin Stat. § 904.04(2)[5]

¶ 7.   The State is required to prove in a ch. 980 commitment that the respondent is "sexually violent" within the meaning of Wis. Stat. § 980.01(7) because the respondent suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence in the future. Wis. Stat. § 980.06. Here, the State introduced evidence of Franklin's past conduct both to show Franklin has a mental disorder and that it was substantially probable that he would commit acts of sexual violence in the future, thereby meeting its burden under § 980.01(7) and § 980.06.

¶ 8.   Franklin contends that the admission of evidence of his past conduct is prohibited character evidence under Wis. Stat. § 904.04(2), which statute he contends is applicable. The State asserts, among other arguments, that because the definition set out in Wis. Stat. § 980.01(7) requires proof for assessing the substantial probability of future conduct, rather than proof

---

[5] Because proving the respondent's mental state is an essential element of the State's case, it can be argued that the respondent's character, itself, is at issue. Therefore, evidence of character, or specific instances of conduct that bear on character, may be offered. *See* Wis. Stat. § 904.05(2) (2001–02). Section 904.05(2) states, "In cases in which character or a trait of character of a person *is an essential element* of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct." *Id.* (emphasis added). This statute does not address the admissibility of such character evidence; rather, it addresses methods of proof when character is at issue. 7 Daniel D. Blinka, *Wisconsin Practice, Wisconsin Evidence* § 405.1 (2d. ed. 2001). However, because the applicability of § 904.05(2) was not fully briefed by the parties, we do not further address it.

offered in regard to disputed past conduct, § 904.04(2) is not part of the analysis for admission of the evidence received here.

¶ 9.    Given the positions of the parties, this case requires us to interpret the use of Wis. Stat. § 904.04(2) in the context of a ch. 980 proceeding. As is usual in cases of statutory construction, we begin with the language of the statute itself. The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *Angela M.W.,* 209 Wis. 2d at 121; *Ball v. District No. 4, Area Bd. of Vocational, Technical & Adult Educ.,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389 (1984). Unless technical terms are involved, the statutory language is given its plain and ordinary meaning. *Angela M.W.,* 209 Wis. 2d at 121; *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656. If that meaning is clear on its face, we need go no further, and simply will apply it. *Bruno,* 260 Wis. 2d 633, ¶ 20; *Ball,* 117 Wis. 2d at 537–38. However, if the language is ambiguous, we may examine extrinsic sources for evidence of legislative intent. *Angela M.W.,* 209 Wis. 2d at 121. Here, although neither party contends that the statute is ambiguous in the usual sense of disputing what it means, they do disagree about whether it is applicable in a ch. 980 proceeding for the evidence received here:

¶ 10.    Wisconsin Stat. § 904.04(2) is known as the "other acts" statute and it sets out when certain types of evidence may be excluded or admitted. It provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportu-

279

nity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order to ascertain whether evidence of Franklin's past acts is to be evaluated under § 904.04(2), it is helpful to review the types of evidence that fall within § 904.04(2) and for what purposes use has been restricted or permitted.

¶ 11. Wisconsin Stat. § 904.04(2) evidence may be offered in a criminal trial or a civil suit. *State v. Sullivan,* 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998) and Daniel B. Blinka, *Evidence of Character, Habit and "Similar Acts" in Wisconsin Civil Litigation,* 73 Marq. L.Rev. 283, 289 (1989). It has been offered to prove the character of a person: (1) for the impermissible purpose of implying that the person committed a disputed past act[6] that is consistent with his or her character, or (2) for a permissible purpose, such as showing the person acted with a plan, motive, absence of mistake.[7] Its use is

_____

[6] *See State v. Sullivan,* 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998) (concluding that a "focus on an accused's character magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged"); *see also La Crosse County Dep't of Human Servs. v. Tara P,* 2002 WI App 84, ¶ 18, 252 Wis. 2d 179, 643 Wis. 2d 194 (concluding that "[t]he other acts evidence statute is directed at preventing fact finders from unnecessary exposure to character and propensity evidence in the context of determining whether a party committed an alleged act").

[7] *See, e.g., Peasley v. State,* 83 Wis. 2d 224, 232–33, 265 N.W.2d 506 (1978) (allowing evidence of defendant's prior drug sales to show defendant possessed cocaine with the intent to deliver); *Haskins v. State,* 97 Wis. 2d 408, 412–14, 294 N.W.2d 25 (1980) (admitting evidence of defendant's earlier felony conduct as proof of plan and motive for murder); *State v. Pharr,* 115 Wis. 2d 334, 346–47, 340 N.W.2d 498 (1983) (allowing evidence of

carefully regulated when the other acts are "bad acts" because the admission of such evidence may imply that the defendant is a bad person. *Whitty v. State,* 34 Wis. 2d 278, 292–97, 154 N.W.2d 557 (1967). As we said in *Whitty,* when other acts evidence is admitted, there can be "an overstrong tendency" to believe that a defendant is guilty of the crime charged simply because he or she is the kind of person who is likely to act a certain way, or that the defendant should be punished now, not necessarily for the crime charged, but because the defendant may have escaped punishment for a previous offense. *Id.* at 292.

¶ 12. Wisconsin Stat. § 904.04(2) addresses evidence offered for a prohibited use and for a permitted use. When evidence is offered for a prohibited use, it is offered as relevant proof of acts that have already occurred by attempting to show that the person has a

---

other crimes in order to show plan and to provide context for the crime charged); *State v. Rutchik,* 116 Wis. 2d 61, 68, 341 N.W.2d 639 (1984) (concluding that evidence of defendant's previous burglary was admissible to show method of operation, preparation, plan, identity and intent); and *State v. Derango,* 2000 WI 89, ¶ 42, 236 Wis. 2d 721, 613 N.W.2d 833 (concluding that defendant's possession of videotapes of young girls performing striptease dances is admissible to show intent and motive in a child enticement case). And in a civil context, *see Lievrouw v. Roth,* 157 Wis. 2d 332, 349, 459 N.W.2d 850 (Ct. App. 1990) (concluding that evidence of defendant's other incidents of drunk driving is admissible when a plaintiff seeks compensatory and punitive damages arising out of an accident that defendant allegedly caused while intoxicated in order to show that defendant was aware of the dangers of drunk driving); *Lobermeier v. General Tel. Co. of Wisconsin,* 119 Wis. 2d 129, 150, 349 N.W.2d 466 (1984) (permitting evidence of other or similar accidents or occurrences to show that the responsible party knew or should have known of a defect or unsafe condition).

certain character and the acts denied are consistent with his or her character. *State v. Veach,* 2002 WI 110, ¶ 48, 255 Wis. 2d 390, 648 N.W.2d 447. As the statute explains, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person *acted* in conformity therewith . . . ." Section 904.04(2) (emphasis added). Additionally, in a permitted use of other acts evidence, e.g., to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,"[8] § 904.04(2) evidence again is offered to prove whether the defendant did or did not do a past act. *State v. Anderson,* 230 Wis. 2d 121, 129–30, 600 N.W.2d 913 (Ct. App. 1999). Therefore, in each instance, § 904.04(2) looks back to analyzing proof of acts that have already occurred. It does not look forward to assess the substantial probability of future conduct, which is the relevant question here.

■

¶ 13.   We can reasonably presume that the legislature chose the statutory words carefully. *Ball,* 117 Wis. 2d at 539. Therefore, its use of the past tense, consistent with the lack of a prospective quality to the statute, evidences unambiguous legislative intent to restrict the application of Wis. Stat. § 904.04(2) to analyzing evidence used to prove past acts.

■

¶ 14.   We also note that the use of prior acts has provided proof where future conduct is the focus of other types of proceedings. For example, in actions to terminate parental rights, a parent's past conduct is

---

[8] *See* Blinka, *supra,* § 404.7 (stating the list of "permissible propositions in [Wis. Stat.] § 904.04(2) are neither exhaustive nor mutually exclusive").

offered not to prove that the parent is a bad person, but to illuminate the reasons why the parent is unable or unwilling to establish a parental relationship or adequately care for the child in the future. *See* Wis. Stat. § 48.415 (2001–02); *State v. Quinsanna D.*, 2002 WI App 318, ¶ 23, 259 Wis. 2d 429, 655 N.W.2d 752 (concluding that evidence of the parent's past criminal conduct and resulting incarceration is relevant to the parent's failure to establish a substantial parental relationship with her children and why that failure continued); *La Crosse County Dep't of Human Servs. v. Tara P.*, 2002 WI App 84, ¶ 13, 252 Wis. 2d 179, 643 Wis. 2d 194 (concluding that evidence of a parent's failure to meet specific conditions necessary for the return of her children was relevant to proving whether there is a "substantial likelihood" that the parent will be able to meet those conditions within the requisite time period). In *Tara P.,* the court of appeals explained,

> In determining whether "there is a substantial likelihood" that a parent will not meet conditions for the return of his or her children, a fact finder must necessarily consider the parent's relevant character traits and patterns of behavior, and the likelihood that any problematic traits or propensities have been or can be modified in order to assure the safety of the children.

*Id.,* ¶ 18. Likewise, in ch. 980 proceedings, the fact finder must necessarily consider a respondent's "relevant character traits and patterns of behavior, and the likelihood that any problematic traits or propensities have been or can be modified" in order to assure the safety of the community at large and the person him-

self.[9] To look forward, we must necessarily look back. From this we conclude that Wis. Stat. § 904.04(2) is not applicable when evaluating the admissibility of evidence that is offered in a ch. 980 proceeding.

## C. Evidence Admitted Here

¶ 15.    Chapter 980 provides a process for the "civil commitment of persons, previously convicted of a sexually violent offense, who currently suffer from a mental disorder that predisposes them to repeat such acts." *State v. Post,* 197 Wis. 2d 279, 294, 541 N.W.2d 115 (1995). In a ch. 980 proceeding, the State must prove beyond a reasonable doubt that: (1) the person has a mental disorder; and (2) the person is dangerous to others because his or her mental disorder creates a substantial probability that he or she will engage in acts of sexual violence.[10] *Post,* 197 Wis. 2d at 298. The distinction, between a dangerous sexual offender subject to ch. 980 commitment and the typical recidivist, is the lack of behavioral control in regard to acts of sexual

[9] One authority noted, "[T]he nature of the 'sexual predator' inquiry virtually guarantees the wide-ranging admissibility of evidence concerning the defendant's past crimes and transgressions." Blinka, *supra,* § 404.4.

[10] Although there are other factors the State must address in a ch. 980 commitment, these two factors are those for which the State says the objected-to evidence is relevant so we focus on them. The concurrence asserts the majority is in error in examining the evidence in terms of proof for two components relative to Franklin's condition. Concurrence, ¶¶ 53–54. However, both Dr. Dennis Doren, the State's expert, and Dr. Charles Lodl, Franklin's expert, identified two components to their opinions.

violence that the respondent's mental disorder causes. *State v. Laxton,* 2002 WI 82, ¶ 21, 254 Wis. 2d 185, 647 N.W.2d 784.

¶ 16.  In order to be admissible in a ch. 980 proceeding, all evidence must be relevant and that relevance must not be outweighed by the danger of unfair prejudice. Wis. Stat. § 904.01; Wis. Stat. § 904.03; *State v. Wolfe,* 2001 WI App 136, ¶ 39, 246 Wis. 2d 233, 631 N.W.2d 240. It is that dual test the circuit court must have applied in order to have appropriately exercised its discretion in admitting this evidence.

¶ 17.  Here, Franklin's complained of error is the circuit court's admission of:  (1) his adult criminal record for battery, thefts, and obstruction; (2) conduct reports from the department of corrections; (3) presentence investigation reports; (4) evidence of his probation and parole violations; and (5) references to his juvenile record. He does not object to the admission of his prior adult criminal record of sexually related conduct.

¶ 18.  Much of the objected to evidence initially came in through probation agent Plewa. For example, in introducing the three pre-sentence reports, she explained the repetitive nature of Franklin's criminal conduct, which began when he was only fifteen years old and was found to be "uncontrollable." She described his repeated lack of control of his behavior that continued as an adult. She explained that one of the theft convictions resulted from his pushing a woman to the ground, punching her in the face and taking her purse, while the other two thefts involved merchandise taken from a jewelry store and the theft of an automobile. She described the battery, which involved a female that he beat and kicked and batteries and attempted batteries

that occurred while he was incarcerated. The State tied her testimony to that of Dr. Dennis Doren, a major witness for the State.

¶ 19. Doren testified that in his expert opinion Franklin suffers from paraphilia, a mental disorder characterized by sexual arousal toward something that causes the person problems in his life. It was his opinion that Franklin is aroused by non-consenting sexual interactions and that during these interactions Franklin is not in control of what happens.

¶ 20. In forming his opinions, Doren reviewed the records that Franklin complains should not have been admitted.[11] Doren opined that the 1978 battery did

[11] The concurrence asserts this evidence has no relevance because it does not relate to whether it is substantially probable that Franklin will engage in future acts of sexual violence. Concurrence, ¶¶ 48–52. This is too limited a reading of the proof required by Wis. Stat. § 980.01(7), which requires proof of a mental disorder and proof that the disorder causes it to be substantially probable that the respondent will commit acts of sexual violence in the future. Furthermore, both experts relied on this evidence as background for their opinions. Most specifically, Lodl, Franklin's expert, required this information to form the basis for his opinion that Franklin suffered from schizophrenia, which Lodl opined would not cause it to be substantially probable that Franklin would commit future acts of sexual violence. *See* R. 52:36–40, 48–49.

Additionally, Lodl specifically considered whether Franklin ever had "been involved with the legal system other than the sexual offenses that occurred." R. 52:19. Lodl also decided that there was insufficient evidence upon which he could opine that Franklin had a mental disorder sufficient to satisfy ch. 980, even though he acknowledged on cross examination that Franklin did evidence elements of an anti-social personality disorder, both in his sexual interactions and in other conduct. *See* R. 52:81–84.

have a sexual component and if not interrupted it would have led to a sexual assault. He noted that while incarcerated, Franklin has had repeated instances of out-of-control conduct and that Franklin has said that he was not in control of what happened during the sexual crimes of which he was convicted. Doren opined that since Franklin was a juvenile he has had difficulties controlling his behavior and that this lack of control is a feature of his paraphilia. Doren also explained that each time Franklin was released from a controlled environment, he soon committed another act of sexual violence, showing a compulsion to continue non-consensual sexual interactions. And finally, his department of correction records and the pre-sentence reports show Franklin has not completed treatment programs for his sexual disorder while confined. Doren said it was his opinion that Franklin suffers from a mental disorder, paraphilia, and it is substantially probable that if released from confinement, Franklin will commit acts of sexual violence in the future due to that mental disorder.

¶ 21.  In ruling on Franklin's motion, the circuit court considered the potential relevancy of the challenged evidence and concluded it had some degree of relevancy to whether Franklin was a sexually violent person, but the weight was for the jury. It also concluded that the evidence appeared to support Franklin's case as well as the State's, and that there was no unfair prejudice. Based on this record and the circuit court's patient attention to the arguments and the testimony presented, we cannot say the circuit court erroneously exercised its discretion in concluding that the evidence at issue was relevant and not unfairly prejudicial.

¶ 22. Our opinion in this regard is supported by Doren's diagnosis that Franklin has a mental disorder that features uncontrolled, aggressive conduct. Franklin has a long history of repeatedly being out-of-control, commencing with his juvenile court adjudications, continuing in his adult criminal conduct and in his failure to conform his behavior to established rules when on probation, parole or when within a correctional institution.[12] Other courts have noted past uncontrolled behavior is relevant to whether a person will exhibit uncontrolled behavior in the future. *See Wolfe,* 246 Wis. 2d 233, ¶ 37.[13] As the United States Supreme Court has explained, "[p]revious instances of violent behavior

[12] Franklin had 126 conduct reports while incarcerated as an adult. Those department of corrections violations that were repeated to the jury involved battery, attempted battery, disorderly conduct, threats to others, fighting and failure to obey the rules of the institution. Additionally, as Lodl testified, "there are sexual issues in his record as well, the sexual assaults that he is convicted of, the battery incidents that seem to include some sexual behavior or at least have some sexual inuendo to them all the way back to I believe 1971 where he was charged with fornicating . . . ." R. 52:48–49.

[13] In *State v. Wolfe,* 2001 WI App 136, 246 Wis. 2d 233, 631 N.W.2d 240, the court of appeals determined that the use of other acts evidence unrelated to sexual behavior in a ch. 980 proceeding was relevant to the proofs required for commitment. There, the State introduced evidence of Wolfe's misconduct at Norris Adolescent Treatment Center and his adult conviction of arson. The court of appeals concluded that these convictions demonstrated a pervasive pattern of disregard for the rights of others, failure to comply with rules, irresponsibility and lack of remorse, which were relevant to Wolfe's diagnosed personality disorder and therefore relevant to the ch. 980 elements required for commitment. *Id.,* ¶ 40.

are an important indicator of future violent tendencies." *Kansas v. Hendricks,* 521 U.S. 346, 357–58 (1997) (quoting *Heller v. Doe,* 509 U.S. 312, 323 (1993)). Here, even though all of the past examples of uncontrolled conduct did not relate to sexual acts, they were relevant to Franklin's diagnoses of paraphilia and of schizophrenia, as both experts used this evidence to support their opinions. Additionally, as the record in this case shows, the standard risk assessment for sexual offenders takes into account all past violations of the law in attempting to evaluate the probability of future sexually assaultive behavior.[14] However, those violations that are sexually related are weighted more heavily in the assessment. Both experts testified that they used these risk assessment tools. We agree that the evidence is relevant.

¶ 23. We also agree that the probative value of this evidence is not substantially outweighed by unfair prejudice to Franklin. *See* Wis. Stat. § 904.03. Almost any relevant evidence presented by the State would be prejudicial to Franklin. The test, however, is whether the evidence is *unfairly* prejudicial. Evidence is unfairly prejudicial if it has "a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Sullivan,* 216 Wis. 2d at 789–90. *See State v. Davidson,* 2000 WI 91, ¶ 73, 236 Wis. 2d 537, 613

[14] The concurrence maintains that the only place where these tools are found is in a deposition that was not admitted into evidence. Concurrence, ¶ 45. However, all three tools are in the appendix of Franklin's brief in reply. The State did not object to this inclusion, so we have assumed that both parties agree the assessment tools are correctly part of the record.

N.W.2d 606; *Wolfe,* 246 Wis. 2d 233, ¶ 41. There is nothing unfairly prejudicial about the other acts evidence offered in this case. It is simply factual observations showing Franklin's long and consistent history of poorly controlled conduct that both experts used in coming to their conclusions. As such, we conclude that the circuit court did not erroneously exercise its discretion in admitting it.

### III. CONCLUSION

¶ 24.    We conclude that during a commitment proceeding under ch. 980, Wis. Stat. § 904.04(2) does not apply to evidence offered to prove that the respondent has a mental disorder that makes it substantially probable that the respondent will commit acts of sexual violence in the future. Because we also conclude that such evidence was properly admitted here, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 25. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*).    I do not dispute the majority opinion's conclusion that Wis. Stat. § 904.04(2), which prevents "evidence of other crimes, wrongs, or acts" from being admitted to "prove the character of a person in order to show that the person acted in conformity therewith," is inapposite to a chapter 980 proceeding.

¶ 26. Wisconsin Stat. § 904.04(2) is not the focus of this case.[1] Evidence must clear the relevance hurdle, § 904.01, before its admissibility comes into question.[2]

¶ 27. The real issues in this case are twofold: First, is the testimony introduced by the probation and parole agent regarding the defendant's prior nonsexual misconduct relevant to a determination under chapter 980 that the defendant's "mental disorder . . . makes it substantially probable that the [defendant] will engage in acts of sexual violence?"[3] Second, even if such evidence is relevant, was its probative value substantially outweighed by the danger of unfair prejudice?[4]

¶ 28. I conclude that the answer to both of these questions is no and that the circuit court erroneously exercised its discretion in failing to consider each type of evidence that the defendant sought to exclude to determine its relevance and its potential for unfair prejudice. Despite the circuit court's erroneous exercise of discretion, I concur, rather than dissent, because I agree with the State that the circuit court's error in admitting the challenged evidence in this case was harmless.

[1] The majority opinion asserts that defendant moved to exclude prior acts evidence pursuant to Wis. Stat. § 904.04(2). Majority op., ¶ 3. According to the trial record, the defendant objected to this evidence primarily on the basis of relevance and its relation to laying a foundation for the State's expert witness.

[2] Wisconsin Stat. § 904.01 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3] Wis. Stat. § 980.01(7).

[4] Wis. Stat. § 904.03.

291

I

¶ 29.   I first consider the issue of relevance. The first consideration in assessing relevance is whether the evidence relates to a fact or proposition that is of consequence to the determination of the action.[5]

¶ 30.   Determining whether or not evidence is relevant lies within the discretion of the circuit court.[6] This court has often said that "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purposes of achieving a reasonable determination."[7] An appellate court will affirm a circuit court's discretionary decision as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."[8] Therefore, the record on appeal must "reflect the circuit court's reasoned appli-

---

[5] Wis. Stat. § 904.01. The court has explained that "[t]he first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action." *State v. Sullivan,* 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998).

[6] *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis.2d 67, 629 N.W.2d 698 ("We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard."). *See also Morden v. Cont'l AG,* 2000 WI 51, ¶ 81, 235 Wis. 2d 325, 611 N.W.2d 659; *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983).

[7] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

[8] *Long v. Long,* 196 Wis. 2d 691, 695, 539 n.462 (Ct. App. 1995). *See also State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985); *Shuput v. Lauer,* 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

cation of the appropriate legal standard to the relevant facts in the case."[9] "If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion."[10]

¶ 31. The majority opinion contends that "the circuit court's patient attention to the arguments and the testimony presented" demonstrated a proper exercise of discretion.[11] I disagree with this characterization of the record.

¶ 32. In making its determination to admit the evidence, the circuit court did not examine the evidence of the defendant's prior juvenile convictions, nonsexual adult convictions, or institutional conduct reports for their relevance. The circuit court never ruled on how each of these types of evidence is relevant to show that the defendant had a mental disorder that makes it substantially probable that he will engage in future acts of sexual violence.[12] Rather, the circuit court merely asserted that all of the evidence was relevant without considering the legal requirements of chapter 980.

---

[9] *State v. Delgado,* 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

[10] *State v. Hutnik* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). *See also In re Settlement for Personal Injuries of Konicki* 186 Wis. 2d 140, 150, 519 N.W.2d 723 (Ct. App. 1994) ("[A] trial court erroneously exercises its discretion when its decision is based on a misapplication or erroneous view of the law.").

[11] Majority op., ¶ 21.

[12] Wis. Stat. § 980.01(7). *See State v. Laxton,* 2002 WI 82, ¶ 2, 254 Wis. 2d 185, 647 N.W.2d 784.

¶ 33. Had the circuit court examined and analyzed the evidence of the defendant's prior nonsexual misconduct, it would have concluded as a matter of law that none of this evidence was relevant.[13]

¶ 34. Relevance is governed by Wis. Stat. § 904.01. In the context of a chapter 980 proceeding, evidence is relevant if it pertains to "a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."[14] In order to address relevance, I must first set forth certain facts that are not clearly provided in the majority opinion. I then address the majority opinion's erroneous explication of the State's and the defendant's expert witnesses and U.S. Supreme Court precedent to support its conclusion that evidence of the defendant's prior nonsexual misconduct was relevant.

A

¶ 35. At trial, the defendant sought to exclude evidence of three types of prior nonsexual misconduct contained in presentence investigation reports and other institutional records from being read to the jury by a probation and parole agent. Those pieces of evidence were: (1) his juvenile record; (2) his prior adult criminal record for crimes unrelated to sexual activity; and (3) conduct violations while he was incarcerated. The defendant did not contest the admission of his prior misconduct that was sexual in nature.

---

[13] The circuit court provided no analysis to overcome defense counsel's objection. The circuit court explained that it would be helpful to defense counsel's case to allow all of this evidence to come in because it would be consistent with the defendant's position that he suffered from schizophrenia rather than paraphilia.

[14] Wis. Stat. § 980.01(7).

¶ 36. The circuit court denied the defendant's motion to exclude this evidence and allowed the probation and parole agent to testify. As a result of that decision, the State introduced instances of the defendant's prior nonsexual misconduct into evidence, including the following:

Juvenile conduct:
• 1970: Uncontrollable conduct.
• 1971: Uncontrollable conduct.
• 1971: Loitering, escape from custody, obstructing an officer, running away, uncontrollable and disorderly conduct, fleeing and fornication.

Adult conduct:
• 1973: Battery. Convicted and sentenced to one year of probation.
• 1975: Theft misdemeanor. Convicted and sentenced to 6 months, stayed and 1-year probation.
• 1976: Theft from person, obstructing an officer and theft. Convicted and sentenced to two years.
• 1978: Battery. Convicted and sentenced to 6 months.[15]

Institutional conduct (107 minor and 19 major incidents):
• Attempted battery
• Battery, disobeying orders, disruptive conduct, threats

---

[15] The 1978 battery had a sexual component to it. The defendant threw a woman into the bushes and attempted to lie on her, and when he was apprehended his penis was exposed. The defendant does not challenge the admission of this evidence.

- Fighting
- Disobeying orders, disrespect, threats
- Disobeying orders, disrespect, threats
- Attempted escape

¶ 37. At trial, the probation and parole agent testified about these numerous incidents involving the defendant. With regard to his juvenile record, the agent testified that at the ages of fifteen and sixteen the defendant had three contacts with the criminal justice system on various occasions for uncontrollable conduct, loitering, escape from custody, obstructing an officer, running away, uncontrollable and disorderly conduct, and fleeing and fornication.

¶ 38. With regard to his adult record, the agent testified about a battery conviction in which the defendant struck his girlfriend in the face with his fist and with his cleated shoe, and that the defendant had stolen a car from a friend. The agent also testified that the defendant's probation had been revoked for theft of some jewelry and a purse snatching incident in which he punched a female victim in order to take her purse.

¶ 39. The agent further testified about conduct reports the defendant received while he was incarcerated. She testified that the defendant had received 107 minor reports and 19 major reports. The 126 conduct reports are mostly unspecified in the Department of Corrections reports admitted into evidence. The agent testified that these conduct reports included violations for attempted battery, battery, disruptive conduct, threats, disobeying orders, disrespect, and one attempted escape. According to the probation and parole agent many of the conduct reports were related to hygiene problems and abnormal behavior related to the defendant's schizophrenia.

¶ 40. The majority opinion contends that this evidence of the defendant's prior nonsexual misconduct was relevant, relying on the testimony of the State's and the defendant's expert witnesses, Doctors Doren and Lodl respectively.

¶ 41. According to the majority opinion, "[E]ven though all of the past examples of uncontrolled conduct did not relate to sexual acts, they were relevant to [the defendant's] diagnoses of paraphilia and of schizophrenia . . . ."[16] Evidence of the defendant's prior nonsexual misconduct was, according to the majority opinion, relevant because both experts used risk assessment tools that considered the prior nonsexual conduct of the defendant.[17]

¶ 42. The majority opinion asserts that the State "tied [the parole and probation agent's] testimony to that of Dr. Dennis Doren,"[18] who "opined that since Franklin was a juvenile he has had difficulties controlling his behavior and that this lack of control is a feature of his paraphilia."[19] These characterizations of the relevance of the defendant's prior nonsexual misconduct are not substantiated by Dr. Doren's or Dr. Lodl's testimony to the jury at trial, nor by the State's or the defendant's closing arguments. Neither of the experts drew a link between the defendant's "uncontrolled behavior" and sexually violent behavior.[20]

---

[16] Majority op., ¶ 22.

[17] Id.

[18] Id., ¶ 18.

[19] Id., ¶ 20.

[20] Dr. Doren testified that the defendant's sexually violent behavior may indicate an "internal drive or internal push" to

¶ 43.   Dr. Doren and Dr. Lodl apparently relied on the defendant's prior nonsexual criminal history when using sex offender risk assessment tools in evaluating the defendant.[21] An expert's reliance on various facts and materials is not dispositive of the question of whether such facts and materials are admissible evidence. Expert witnesses are allowed to base their testimony on evidence that is otherwise inadmissible and not properly considered by the jury.[22] Defense counsel objected to the jury's consideration of the defendant's prior acts of misconduct, not to the expert witnesses' consideration of such acts in forming their medical opinions.

¶ 44.   The majority opinion makes much of these tools, arguing that "as the record in this case shows, the standard risk assessment for sexual offenders takes into account all past violations of the law in attempting to evaluate the probability of future sexually assaultive behavior. However, those violations that are sexually related are weighted more heavily in the assessment."[23]

¶ 45.   The "record" of which the majority opinion speaks, however, was not Dr. Doren's testimony at trial, but his deposition (which apparently was not introduced at trial and was not presented to the jury) in which he acknowledged that the defendant's prior nonsexual misconduct added points to the score of some,

commit sexually violent assaults. Dr. Doren testified that the defendant said that his sexual violence related to lack of control when he was drinking and that the defendant is not in control during sexual assaults.

[21] Majority op., ¶ 22.

[22] *See* Wis. Stat. § 907.03; *Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 36, 469 N.W.2d 595 (1991).

[23] Majority op., ¶ 22.

but not all, of the instruments that measure the risk of sexual offense recidivism that Dr. Doren considered.[24]

¶ 46. The majority opinion mistakenly believes that I am objecting to its consideration of these tests because they are not part of the record.[25] My argument is that these tests were never shown to the jury and no expert testimony, by either Dr. Doren or Dr. Lodl, explained why the probation and parole agent's testimony regarding the defendant's prior acts of misconduct made it substantially probable that the defendant would engage in future acts of sexual violence.

¶ 47. At trial, Dr. Doren never described any of these tools as taking into account all past law violations in attempting to evaluate the probability of sexual violence. Thus the majority opinion's conclusions that "uncontrolled behavior" and sexually violent behavior are connected are not supported by Dr. Doren's use of the assessment tools.

¶ 48. At trial, Dr. Doren never suggested that any of the defendant's nonsexual behavior related to a predisposition to sexually violent behavior. Dr. Doren did not draw any conclusions at trial suggesting that

---

[24] Each of the tools uses slightly different factors, but Dr. Doren testified that they are primarily the same. Dr. Doren identified three tests he had used on the defendant in this case: RRASOR, Static-99, and the Minnesota Sex Offender Screening Tool. Dr. Doren described the RRASOR test as having four components: (1) the official record of the defendant's history for sex offenses; (2) the age of the offender; (3) whether the offender has had a male victim; and (4) whether the offender's victim was outside of the family. Dr. Doren described Static-99 as "work[ing] in the same way" and the Minnesota Sex Offender Screening Tool as "basically working in the same way."

[25] Majority op., ¶ 22 n.14.

the defendant's prior nonsexual misconduct made it more likely that he would commit acts of sexual violence in the future.

¶ 49. Dr. Doren's testimony at trial did not rely on the defendant's prior nonsexual misconduct. Dr. Doren did not specifically refer to any of the defendant's prior misconduct or history unrelated to sexual behavior in explaining his diagnosis to the jury. Dr. Doren did not testify that the defendant's prior nonsexual misconduct was relevant to his determination of the defendant's propensity for sexual violence. In fact, Doren's testimony leads to the conclusion that the defendant's prior nonsexual misconduct is not relevant. Dr. Doren concluded that general criminality does not suggest paraphilia. Dr. Doren testified as follows about the defendant's prior misconduct:

> [T]he first thing I was looking for in Mr. Franklin's situation was his behavioral pattern, whether I could demonstrate that he interacted with someone in a known-consensual way for sexual purposes. There were three different times [the defendant] was convicted of offenses that were, in my opinion, clearly sexual in nature and involving a non-consensual process; it occurred in 1978, 1979, and 1984.
>
> Another aspect of the behavioral pattern that I look at, though, is to see whether or not that's all part of an overall criminal way of being or if a person's criminality is quite specific to sexual offending. *If a person is just criminal in a lot of ways, that does not suggest paraphilia, it doesn't negate it but it doesn't suggest it;* whereas if the person's sole way of acting in an illegal way is sexual, that would suggest there's something driving the person specifically in a sexual manner.
>
> *As a juvenile, the records would indicate anyway, that as a juvenile his—and early adulthood his illegal behavior was of a variety of types not including much in*

*the way of sexuality;* there was one event as a juvenile, but as a—as an adult, basically since July of '76, all of his known illegal behavior involved raping or attempted raping. (Emphasis added.)

¶ 50.   In sum, nothing in Dr. Doren's testimony to the jury suggested that a determination that a person is sexually violent is aided by past episodes of uncontrolled behavior or criminality not relating to sexual misconduct.

¶ 51.   Furthermore, the majority opinion's claim that the defendant's expert witness supports its conclusion that the defendant has a mental disorder that features uncontrolled, aggressive conduct is not supported in the record. The majority opinion quotes Dr. Lodl's testimony[26] but omits the underlined portion below and changes the meaning of his testimony:

And obviously there are sexual issues in his record as well, the sexual assaults the he is convicted of, the battery incidents that seem to include some sexual behavior or at least have some sexual innuendo to them all the way back to I believe to 1971 where he was charged with fornicating, *although I do not see that as a diagnosis—as a legal issue that would contribute to a diagnosis of sexual deviation, okay, it's just people are noting his sexual behavior.*

¶ 52.   Dr. Lodl's testimony actually undercuts the majority opinion's conclusion and suggests that the mere presence of prior sexual behavior in the defendant's past does not lead to a conclusion that he is sexually deviant.

¶ 53.   The majority opinion errs in its relevance analysis by bifurcating Wis. Stat. § 980.01(7) into two prongs, namely: (1) finding that the defendant has a

---

[26] *Id.,* ¶ 22 n.12.

mental disorder that makes it difficult for him to control his behavior; and (2) evaluating whether the defendant will engage in future sexual violence.[27] This test is not the one set forth in § 980.01(7), however. The statute requires a nexus between the mental disorder and the probability of future sexual violence. The court explained in *State v. Laxton,* 2002 WI 82, ¶ 2, 254 Wis. 2d 185, 647 N.W.2d 784, that a nexus must be established between the mental disorder and the probability of future sexual violence. The court stated:

> [W]e conclude that such a civil commitment [of a sexual predator] does not require a separate finding that the individual's mental disorder involves serious difficulty for such person to control his or her behavior. The requisite proof of lack of control is established when the nexus between such person's mental disorder and dangerousness has been established.

¶ 54.   The majority opinion's apparent conclusion that because the expert witnesses "identified two components to their opinions" that this must be the law is perplexing and erroneous. Dr. Doren testified that the defendant suffered from paraphilia not-otherwise-specified and that this diagnosis made it substantially probable that the defendant would engage in future acts of sexual violence. Dr. Lodl testified that the defendant suffered from schizophrenia and that this made it less likely that he would commit future acts of sexual violence. The testimony of the experts attempted to draw a link between the defendant's mental condition and his propensity for future sexual violence.

¶ 55.   I conclude that the majority opinion's attempt to support its conclusion that the defendant's prior nonsexual misconduct was relevant to the chapter

---

[27] *Id.,* ¶ 15.

980 determination by reference to the testimony of the State's and defendant's expert witnesses fails. Evidence of the defendant's prior acts of misconduct were not relevant because, according to the record, this evidence does not relate to a fact or proposition that is of consequence to the determination of the action.

## C

¶ 56. The majority opinion contends that evidence of the defendant's prior nonsexual misconduct was relevant, relying on U.S. Supreme Court precedent. The majority opinion relies on *Kansas v. Hendricks*, 521 U.S. 346, 357–58 (1997), to support its conclusion that the defendant's prior nonsexual misconduct was relevant because "[p]revious instances of violent behavior are an important indicator of future violent tendencies."[28]

¶ 57. The majority opinion takes the U.S. Supreme Court's language out of context.

¶ 58. What the Court actually said in *Hendricks* was that substantive due process in sexual predator cases requires proof of more than a disposition for violence; it requires evidence of past sexually violent behavior and a mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated:

> The [Kansas] statute thus *requires proof of more than a mere predisposition to violence;* rather, it requires evidence of past *sexually violent behavior* and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated.

---

[28] *Id.,* ¶ 22.

As we have recognized, "[p]revious instances of violent behavior are an important indicator of future violent tendencies."[29]

¶ 59. If anything, the *Hendricks* court explicitly rejected the proposition that prior uncontrolled behavior (at least under the Kansas statute, which is substantially similar to Wisconsin's) is, in itself, sufficient to demonstrate future sexual violence.[30]

---

[29] *Kansas v. Hendricks,* 521 U.S. 346, 357–58 (1997) (emphasis added).

[30] The majority opinion's reliance on the court of appeals decision, *State v. Wolfe,* 2001 WI App 136, 246 Wis. 2d 233, 631 N.W.2d 240, for the proposition that "past uncontrolled behavior is relevant to whether a person will exhibit uncontrolled behavior in the future," is inaccurate. Majority op., ¶ 22. Unfortunately, *Wolfe* quoted only part of the language from *Hendricks* discussed above, taking the *Hendricks* language out of context. *Wolfe* did, however, explain the "relevancy" standard as follows: "The jury needed to consider evidence of relevant past conduct to determine whether Wolfe had a mental disorder which predisposed him to commit acts of sexual violence and whether there was a substantial probability that he would commit acts of sexual violence in the future." *Wolfe,* 246 Wis. 2d 233, ¶ 37. Furthermore, the majority opinion's assertion that "in ch. 980 proceedings, the fact finder must necessarily consider a respondent's 'relevant character traits and patterns of behavior, and the likelihood that any problematic traits or propensities have been or can be modified' in order to assure the safety of the community at large and the person himself," presumes a different context. Majority op., ¶ 14. The majority opinion quotes *State v. Tara P.,* 2002 WI App 84, ¶ 18, 252 Wis. 2d 179, 643 N.W.2d 194, which is a family law case and does not deal with the specific workings of chapter 980 or its constitutional requirements.

304

¶ 60. The U.S. Supreme Court explained in a later case that *Hendricks* emphasized that commitment of sexual predators cannot become a law of general deterrence.[31] According to the Court, the dangerous sexual offender whose serious mental illness subjects him to civil commitment must be distinguished from the dangerous but typical criminal recidivist. The Court wrote as follows:

> *Hendricks* underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment "from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." . . . That distinction is necessary lest "civil commitment" become a "mechanism for retribution or general deterrence"—functions properly those of criminal law, not civil commitment.
>
> . . . .
>
> [T]he severity of the mental abnormality itself[ must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.[32]

¶ 61. I agree with the defendant that "the closer the state gets to committing individuals based on incidents or conduct unrelated to the subject's mental disorder and their risk for committing sexually violent acts in the future the more tenuous the constitutionality of Chapter 980 becomes."[33]

¶ 62. The majority opinion's attempt to support its conclusion that the defendant's prior nonsexual

---

[31] *See Kansas v. Crane,* 534 U.S. 407, 412–13 (2002).

[32] *Kansas v. Crane,* 534 U.S. 407, 412–13 (2002).

[33] Brief of Respondent-Appellant-Petitioner at 10.

misconduct was relevant to the chapter 980 determination by reference to U.S. Supreme Court precedent fails.

## II

¶ 63. Assuming the majority opinion is correct that the probation and parole agent's testimony regarding the nonsexual misconduct of the defendant was relevant, I disagree with the majority opinion's conclusion that "the probative value of this evidence is not substantially outweighed by unfair prejudice to [the defendant]."[34]

¶ 64. Probative value is one facet of relevance.[35] The court has explained probative value as follows: "The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence."[36]

¶ 65. Probative evidence may be excluded. Wisconsin Stat. § 904.03 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The question whether the probative value of otherwise admissible evidence is substantially outweighed by the

[34] Majority op., ¶ 23.

[35] Wis. Stat. § 904.01.

[36] *State v. Sullivan,* 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998).

danger of unfair prejudice, like relevance, rests in the discretion of the circuit court.[37]

¶ 66. The circuit court did not exercise its discretion by performing the necessary balancing test in this case. The circuit court conflated relevance, hearsay, and the balancing test without clearly articulating its basis for overruling the defendant's objections to the evidence. The circuit court ruled as follows in admitting the probation and parole agent's testimony about the defendant's prior nonsexual misconduct:

> [B]ut based on what I know about the [expert witnesses] and what I've heard from you guys, it is relevant and it is probative and, you know, it does get by the hearsay based on all those various sections [the assistant district attorney has] indicated . . . . And obviously the definition of being probative is making an issue more likely than not to the trier of fact . . . . So I guess all I can say is it's one of those cases that yes it does come in for all those reasons . . . . For all those reasons and based on the fact that the Court has considered the balancing of the relevance versus probative value versus prejudicial effect.

¶ 67. In this case, the probative value of the evidence is nonexistent or minimal at best.[38] Dr. Doren did not testify that he relied on any nonsexual misconduct in his diagnosis of paraphilia. The nonsexual

---

[37] *Johnson v. Kokemoor,* 199 Wis. 2d 615, 636, 545 N.W.2d 495 (1996); *Featherly v. Cont'l Ins. Co.,* 73 Wis. 2d 273, 283, 243 N.W.2d 806 (1976).

[38] "Probative value, then, is the product of relevance and an assessment of what the evidence adds to the case. The lower the probative value, the more likely it will be 'substantially outweighed' by unfair prejudice, confusion, or other consideration." 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 403.1 at 114 (2d ed. 2001).

offenses play a minimal role in the risk assessment tools relied on by Dr. Doren to predict the defendant's proclivity for future sexual violence. To the extent that these risk assessment tools do take into account prior nonsexual misconduct, they do not distinguish between 4 offenses and 400. Therefore, when the jury heard testimony about the defendant's numerous prior acts of misconduct, it was hearing far more than what was needed to understand the risk assessment tools being used by the experts.

¶ 68. After examining the probative value of the nonsexual prior misconduct, which was minimal at best in the present case, a circuit court must determine whether the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

¶ 69. The mere fact that evidence proves or strengthens the State's case at trial does not make it unfairly prejudicial, however. In order to demonstrate unfair prejudice, the defendant must show that "the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case."[39]

¶ 70. The defendant in this case asserts that the admission of his juvenile record, his adult criminal record for crimes unrelated to sexual misconduct, and

[39] *State v. Davidson,* 2000 WI 91, ¶ 73, 236 Wis. 2d 537, 613 N.W.2d 606; *State v. Gray,* 225 Wis. 2d 39, 64, 590 N.W.2d 918 (1999); *State v. Sullivan,* 216 Wis. 2d 768, 789–90, 576 N.W.2d 30 (1998).

Department of Corrections conduct reports for violations unrelated to sexual acts contributed to the almost unavoidable conclusion that he is a recidivist criminal and an unpleasant, difficult, and dangerous person generally. This evidence could arouse in jurors a sense of horror, provoke their instinct to punish, or otherwise cause a jury to base its decision on something other than the established propositions in the case.

¶ 71. The State responds that none of the evidence that was admitted in this case was of such a hideous or horrible nature that the jury would have been provoked to punish the defendant for that conduct. The State misses the point. The probation and parole agent testified about the defendant's juvenile offenses, his adult criminal behavior, and his 126 incidences of misconduct while incarcerated. That no one of these offenses was, in itself, hideous or horrible is not significant. A piece of evidence need not be hideous or horrible to fail the unfair prejudice test.

¶ 72. The concern is that testimony about the defendant's repeated repulsive conduct has a cumulative effect. This evidence creates the danger that a jury might be provoked to conclude that the defendant is a bad individual and a repeat criminal who should be institutionalized. This evidence of misconduct is precisely the kind of evidence that can create unfair prejudice because the jury's task is to determine whether it was substantially probable that the defendant would engage in sexual misconduct, not whether he would commit a crime if released into the community. The evidence distracts the jury from its task.

¶ 73. The State's further argument that the defendant is essentially estopped from arguing unfair prejudice because defense counsel urged the jury to look at the defendant's "whole picture" is not compelling.

309

After defense counsel objected, was overruled, and lodged a continuing objection to the introduction of the probation and parole agent's testimony, what further option did defense counsel have? The fact that defense counsel surmised that his objection might be overruled and developed a legal defense in light of that expectation is good lawyering.

¶ 74.   I cannot agree with the majority opinion that the circuit court properly exercised its discretion in this case.

### III

¶ 75.   Despite my conclusion that the defendant's nonsexual prior misconduct was not probative and was unfairly prejudicial and that the circuit court erroneously exercised its discretion in admitting the evidence, I nevertheless agree with the majority opinion's conclusion that the commitment need not be reversed. I agree with the State that the defendant's juvenile record, institutional misconduct record, and adult nonsexual criminal record "pale in comparison to the unchallenged evidence of his sexual offense history."[40] Furthermore, the effect of the evidence of misconduct was mitigated by the testimony of the expert witnesses and the restraint of the State in its closing arguments. I conclude that the circuit court's errors were harmless and the commitment should stand.

¶ 76.   The test for harmless error is that an error is not harmless when it appears beyond a reasonable doubt that the error complained of "contributed to the

_____

[40] Brief of Petitioner-Respondent at 27.

verdict obtained."[41] The harmless error test is not a test for the sufficiency of evidence; it does not ask whether there is evidence in the record apart from the erroneously admitted evidence that could support a conviction.

¶ 77. The question in harmless error analysis is whether the admission of the defendant's nonsexual misconduct contributed to the jury verdict. The impact of the erroneously admitted evidence cannot be assessed either by looking at the erroneously admitted evidence in isolation or by looking at the evidence unaffected by the error.[42]

¶ 78. The court has posited several guidelines for assessing whether an error was harmless, including but not limited to the nature of the error, the frequency of the error, the nature of the state's case, the nature of the defense, the importance of the erroneously admitted or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence, whether the erroneously admitted evidence duplicates the untainted evidence, and the overall strength of the prosecution's case.[43]

¶ 79. The error in the present case was the circuit court's admission of evidence of the defendant's prior nonsexual misconduct. Although the defendant's prior nonsexual misconduct was plentiful, it played a relatively insignificant role in the case.

---

[41] *Chapman v. California,* 386 U.S. 18, 24 (1967), reh'g denied, 386 U.S. 987 (1967).

[42] *State v. Billings,* 110 Wis. 2d 661, 668, 329 N.W.2d 192 (1983).

[43] *State v. Norman,* 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97; *State v. Billings,* 110 Wis. 2d 661, 668–70, 329 N.W.2d 192 (1983).

¶ 80.  At trial, the jury heard testimony from four witnesses: the parole and probation agent who introduced the evidence of the defendant's prior nonsexual misconduct; an employee from the Department of Corrections who testified that the defendant was within 90 days of his release at the time the chapter 980 petition was filed; Dr. Doren, the State's expert witness; and Dr. Lodl, the defendant's expert witness.

¶ 81.  The probation and parole officer testified first, consuming approximately 50 pages of the transcript, about one-half of which related to the defendant's prior nonsexual misconduct. The agent's testimony was followed by the very brief testimony of the Department of Corrections employee. The remaining 200 pages of testimony were evenly divided between Drs. Doren and Lodl.

¶ 82.  In his testimony, Dr. Doren did not rely on the defendant's prior nonsexual misconduct. Dr. Doren's testimony dealt with the defendant's prior sexual misconduct and the fact that all of the defendant's most recent crimes were sexual in nature. Dr. Doren testified that it was his opinion that the defendant had the mental disorder paraphilia not-otherwise-specified and that it was substantially probable that the defendant would engage in future sexual violence.

¶ 83.  Dr. Lodl's testimony primarily sought to refute Dr. Doren's diagnosis of paraphilia. According to Dr. Lodl, the defendant's prior history suggested schizophrenia. Although Dr. Lodl referred generally to the defendant's background, he did not identify specific instances of the defendant's prior misconduct. Dr. Lodl asserted that the defendant's schizophrenia is not a disorder that predisposes an individual to future sexually violent behavior.

¶ 84. Thus, this case was largely a battle of the experts. The State argues that there was no dispute between these experts that the defendant suffered from a mental disorder. The only dispute, according to the State, was whether the defendant's mental disorder made it substantially probable that he would engage in acts of sexual violence.

¶ 85. In closing argument, the State focused exclusively on the competing testimony of the two expert witnesses and did not mention the defendant's prior nonsexual misconduct. The State focused on the three violent sexual acts that the defendant concedes are admissible and sought to discredit Dr. Lodl's testimony.

¶ 86. Defense counsel in closing argument explained that in the defendant's long history of treatment, he had repeatedly been diagnosed with schizophrenia and that the schizophrenia involved hearing voices that had a sexual content. Defense counsel conceded that the defendant had had some other criminal convictions and criminal problems going back to his adolescence but argued that those related to the onset of the defendant's schizophrenia. Defense counsel did not discuss the defendant's prior nonsexual misconduct; he argued that the defendant was confounded by the disease of schizophrenia and that it was not substantially probable that he would commit acts of sexual violence in the future.

¶ 87. Between the time that the probation and parole agent testified about the defendant's prior nonsexual misconduct and the time that the jury entered its verdict, several days elapsed and a substantial amount of relevant testimony was heard. A relatively small amount of this testimony related to the defendant's prior nonsexual misconduct. This misconduct did not appear to form the basis of either the

State's or the defendant's case. Counsel and experts for both the State and the defendant focused on the sexual misconduct that the defendant concedes is relevant to the disposition of this case. The jury does not appear to have been sandbagged by a litany of the defendant's irrelevant past wrongs as the competing parties urged them toward an ultimate disposition.

¶ 88. Applying the harmless error standard to these facts, I agree with the State that it appears beyond a reasonable doubt that the admission of the evidence of the defendant's prior nonsexual misconduct did not contribute to the jury's verdict.

¶ 89. For the reasons set forth, I concur.

¶ 90. I am authorized to state the Justice ANN WALSH BRADLEY joins this opinion.